### Prather v. Commonwealth.

(Decided September 28, 1926.)

### Appeal from Pulaski Circuit Court.

1. Criminal Law.—Evidence held sufficient to take to jury question of defendant's sanity at time of crime, in prosecution for fraudulent conversion of trust funds.
2. Criminal Law.—In prosecution for fraudulent conversion of trust funds, instruction that jury could not acquit for insanity which arose from voluntarily acquired morphine habit held error.
3. Criminal Law.—It is common knowledge that morphine addicts have desire to stop using the drug but are unable to resist craving.

ELBERT WESLEY and GLADSTONE WESLEY for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

T. B. Prather was convicted of the crime of fraudulent conversion of trust funds and his punishment fixed at confinement in the penitentiary for two years. On this appeal he urges as grounds for reversal that the verdict is not sustained by the evidence and that the court erred in its instructions to the jury on the defense of insanity.

It appears that appellant formerly was a prosperous and reputable real estate agent in the city of Somerset and as such negotiated the sale of a tract of land for Miss Mattie Johnson, who died in the year 1922. In the fall of that year her administrator sent to appellant for collection two purchase money lien notes executed for the land in question, aggregating over $1,800.00, and furnished him power of attorney to release the lien of record.

He did all of this but did not account for the proceeds, and was visited by the administrator, W. R. Johnson, on the 10th of January, 1923. On that date he gave to Johnson a check for the amount, with interest, requesting him not to deposit it until the Saturday following. After this he wrote and wired Johnson several times in reference to it. The check was presented at the time suggested but was protested for nonpayment, and appellant, though repeatedly stating that he would pay it, has never paid any part of it. These facts are conclusively established by the Commonwealth and not denied by appellant, who identified his signature to the check and various other papers introduced by the Commonwealth, but who testified that he did not remember any part of the transaction except that he had a hazy recollection of having received the notes for collection and must have collected them and used the proceeds in the purchase of morphine. He further testified that in the year 1918 he underwent an operation for appendicitis, which was followed by serious adhesions, causing him great pain and to relieve which his physician administered morphine and which he used to procure relief until he became a morphine addict. That for some time prior to and after this transaction he was using from eight to twenty grains of morphine daily and spending all of the money he could get for that drug, which he purchased at home and elsewhere on prescription and clandestinely, his defense being that he was of unsound mind and mentally irresponsible. However, he has since been treated for that habit and cured and is now of sound mind.

A large number of witnesses, both lay and professional, were introduced in his behalf, and his defense is upheld by the great weight of the evidence. Physicians who treated him at home, as well as Dr. Sprague at Lexington, to whose sanitorium he was sent on January 31, 1923, testified that in their opinion he was insane and without moral or mental responsibility, and as experts testify that a person in such condition may have an indistinct conception of right and wrong in some instances, but that such addict has little sense of moral or legal responsibility and will feel justified in pursuing any line of conduct that will enable him to procure the drug and is utterly without will power to resist the temptation to falsify, steal or commit any other crime that will enable him to obtain it. There was, however, a scintilla of contradictory proof as to his condition which required a sub-

mission of the case to the jury, and as it must be reversed for the second ground stated *supra* and be tried again we will not now determine whether the verdict is flagrantly against the evidence.

(2)   The first literary paragraph of the instruction on insanity is not criticised, but objection is made to the following qualification:

> "This instruction is subject to this qualification, however, that although the jury may believe from the evidence that the defendant was insane at the time he collected and converted funds belonging to W. R. Johnson, administrator of the estate of Mattie Johnson, deceased, if he did so, yet if you should further believe from the evidence beyond a reasonable doubt that such insanity, if such there was, arose solely from the morphine habit, and that said habit was voluntarily acquired by defendant, you can not acquit him on the ground of insanity."

We think this qualification erroneous.   It is true that in cases of homicide where previous malice is shown and in other cases where a prior specific intent to commit a crime exists voluntary drunkenness neither justifies nor mitigates the offense, and it is uniformly held that temporary insanity caused thereby is no defense in a criminal prosecution.   Temporary insanity caused by the use of opiates is generally held to fall within the same principle.   16 C. J. Title Criminal Law, section 3, and subsections 81, 88.   On the other hand, our court has drawn a distinction between cases where the act constitutes the defense and cases where there must be combined with the act done the intent of the accused, in order to constitute the offense; in the former it being held that such temporary insanity is no defense, and in the latter that such defendant may show that he was unconscious at the time or too drunk to have an intent.   Williams v. Comth., 113 Ky. 652; Terhune v. Comth., 144 Ky. 370; Keeton v. Comth., 92 Ky. 522; Kehoe v. Comth., 149 Ky. 400; Brennon v. Comth., 169 Ky. 815.   But without reference to that distinction it may be said that here as described by his witnesses appellant's condition was chronic; he had been a morphine addict for more than one year previous to the acts complained of and was daily consuming inordinate quantities of that drug.   It is common knowledge that such addicts have a desire to stop

using the drug but are unable to resist the craving for more of it, and it can hardly be said that a person in such condition is acting voluntarily in its continued use. In this respect it is immaterial whether in its inception such habit was voluntarily acquired or was formed in taking medicines administered by physicians. According to the undisputed evidence of the expert witnesses, such addict is insane and will commit any character of crime to obtain the drug and is utterly irresponsible for such acts. If such insanity actually exists his responsibility for the commission of a crime is not to be distinguished from that of other insane persons. It follows that the qualification should not have been given.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.