**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Gregory L. TATE, Appellee.**

**No. 93–SC–675–DG.**

Supreme Court of Kentucky.

Feb. 16, 1995.

Chris Gorman, Atty. Gen. and Carol C. Ullerich, Asst. Atty. Gen., Crim. Appellate Div., Office of the Atty. Gen., Frankfort, for appellant.

Robert B. Cetrulo and Susanne M. Cetrulo, Ware, Bryson, West & Kummer, Edgewood, for appellee.

REYNOLDS, Justice.

This appeal arises from appellee's judgment of conviction of two counts of second-degree robbery, possession of a controlled substance, and being a second-degree persistent felony offender, for which he is serving a twelve-year sentence.

At issue is whether drug addiction is a mental disease, defect, or illness for purposes of KRS 504.020.

Gregory Tate, being in need of money to supply his drug habit, pawned his TV and VCR, borrowed money from friends, and subsequently sold his truck for $1,500.00. The monies were used to purchase drugs which he quickly ingested. Having but $40.00 and seeking more, he attempted to borrow money from a neighbor and after being denied a loan, he entered a grocery store and unsuccessfully attempted to rob it. Still later the same night, he entered another grocery store and robbed it. He was apprehended by two police officers investigating a disorderly conduct call. The officers testified that Tate seemed alert and responsive as he complied with their instructions. Syringes containing cocaine were found upon his person.

At trial, testimony of Dr. Pelligrini, a psychiatrist, was offered by avowal. The psychiatrist testified that Tate suffers from a primary disease of chemical dependency and, as a result, needs to ingest additional drugs, which need is so compelling that it overcomes his ability to conform his conduct to the requirements of the law, although Tate could appreciate the criminality of such conduct. The doctor's testimony supports the basis that Tate knew exactly what he was doing when he entered the grocery store and demanded money. He realized it was legally wrong. The doctor acknowledged that Tate knew what he was doing as he initially sold his personal property to raise money and then unsuccessfully sought a loan from a neighbor and only thereafter resorted to a criminal act. Appellee was not insane based upon the testimony in this case.

Tate testified that he was a drug addict who resorted to crime for the purpose of obtaining funds to buy drugs to avoid suffering from withdrawal symptoms/pain. He maintains that he was mentally ill for the purposes of KRS 504.020(1) and should not be adjudged responsible for any criminal acts to obtain money for drugs. There was no testimony introduced indicating that appellee was in need of a "fix" at the time he committed the robberies. The record is absent evidence of appellee's daily drug needs or the length of time he had gone without a drug fix.

The trial court ruled that Dr. Pelligrini could testify about neither insanity nor intoxication, specifically stating that Kentucky does not recognize voluntary mental illness as a legal defense. The Court of Appeals, by a split panel, reversed Tate's conviction, finding that Dr. Pelligrini should have been permitted to testify in support of appellee's defense of mental illness based upon *Prather v. Commonwealth*, 215 Ky. 714, 287 S.W. 559 (1926).

As noted by the Court of Appeals, the issue is significant and has been subject to considerable debate. Generally, throughout the nation, other jurisdictions have ruled that

"evidence of mere narcotics addiction, standing alone and without other physiological or psychological involvement, raises no issue of such a mental defect or disease as can serve as a basis for the insanity defense." *United States v. Lyons,* 731 F.2d 243 (5th Cir.1984). *See also People v. Madej,* 106 Ill.2d 201, 88 Ill.Dec. 77, 478 N.E.2d 392 (1985); *Joyce v. State,* 684 S.W.2d 553 (Mo.App.1984); *Commonwealth v. Sheehan,* 376 Mass. 765, 383 N.E.2d 1115 (1978); *People v. Borrero,* 19 N.Y.2d 332, 280 N.Y.S.2d 109, 227 N.E.2d 18 (1967); *State v. White,* 27 N.J. 158, 142 A.2d 65 (1958); Fingarette, *Addiction and Criminal Responsibility,* 84 Yale Law Journal 413 (1975); LaFave and Scott, *Criminal Law,* Section 45, page 350–1 (1972).

Tate buttresses his argument upon *Prather, supra,* that being a situation wherein the defendant, a successful realtor, fraudulently converted trust funds as a result of his addiction to morphine following surgery and hospitalization. Prather pled insanity as a defense and utilized expert testimony to show he lacked willpower to resist the urge to commit crimes while seeking money for the purchase of morphine. The Court found that Prather's condition was chronic as he had been an addict for more than one year and was daily consuming inordinate quantities of that drug. Therein, the court reasoned that due to the overwhelming medical evidence of Prather's addiction being involuntary and resulting in mental illness, the defendant was acting involuntarily pursuant to that addiction and, therefore, was not legally responsible for his criminal actions. The Court went on to state, "In this respect it is immaterial whether in its inception such habit was voluntarily acquired or was formed in taking medicines administered by physicians. According to the undisputed evidence of the expert witnesses, such addict (Prather) is insane...." The *Prather* court was actually called on to review a jury instruction which provided that an insane person, whose insanity arose by means of a voluntary morphine habit, should be treated differently than an insane person whose insanity arose by other means. The time has arrived to overrule *Prather.*

The recognition by the *Prather* court of drug addiction constituting a disease which leads to a mental illness is not without criticism by members of the medical community of today. In this case, Dr. Pelligrini conceded that there is considerable debate among his colleagues concerning the reason for the initial ingestion of recreational drugs and the consequences regarding its continued use or withdrawal with regards to the drug or addiction affecting an individual's ability to conduct himself within mainstream society. Therefore, as the basis for the reasoning in *Prather* is no longer valid, neither is its holding.

As stated in Fingarette, *Addiction and Criminal Responsibility, supra:*

> In spite of a vast literature, professionals in the field of drug addiction acknowledge that no satisfactory scientific understanding of drug addiction has been reached. Thus there is no medical foundation for adopting the general proposition at the crux of the exculpatory legal arguments, the proposition that addictive conduct is involuntary.
>
> .　　.　　.　　.　　.
>
> Popular beliefs about the chemically-induced hell of withdrawal agony or the insatiable craving for ecstatic pleasures are profoundly at odds with the facts, though they have deeply colored the thinking of the courts. All this information forces abandonment of the argument that drug addiction—and acts associated with it—be regarded as legally involuntary.
>
> .　　.　　.　　.　　.
>
> The very complexity of the problem calls for legislative determinations concerning rehabilitation, regulation of drug trafficking, and the general administration of criminal law in this area.
>
> .　　.　　.　　.　　.
>
> Coordinating the attack on the complex problem of drug abuse is preeminently a legislative responsibility. For the courts to assume that addictive drug use or addiction-related conduct is involuntary and to build such an unworthy assumption into constitutional and common law doctrine would be a grave error.

As there is dissension in the medical community as to whether addiction is a mental disease or whether it is merely a physical craving, appellee did not meet the initial burden of showing that his criminal conduct was the result of mental illness or retardation as required under KRS 504.020(1). Dr. Pelligrini's view that chemical dependency resulted in Tate's mental illness is not a commonly accepted medical diagnosis. Such view does not have recognized scientific reliability. No additional evidence was introduced to show that such opinion expressed by Dr. Pelligrini has attained a scientific acceptance or credibility among mental health experts so as to necessitate the introduction of his proffered testimony.

*Lyons, supra,* held that a person addicted to drugs should not be allowed to raise an insanity defense when a crime is committed by a narcotic addict in order to obtain drug funds and stated:

> In the first place, there is an element of reasoned choice when an addict knowingly acquires and uses drugs; he could instead have participated in an addiction treatment program. [Citation omitted.] A person is not to be excused for offending "simply because he wanted to very, very badly." [Citation omitted.] Second, since the defense of insanity is "essentially an acknowledgement on the part of society that because of mental disease or defect certain classes of wrongdoers are not properly the subjects of criminal punishment," [citation omitted] it seems anomalous to immunize narcotics addicts from other criminal sanctions when Congress has decreed severe penalties for mere possession and sale of narcotics. [Citation omitted.] In addition, Congress has dealt with the problem of responsibility of narcotics addicts for their crimes by providing for civil commitment and treatment of addicts in lieu of prosecution or sentencing. [Citation omitted].
>
> Finally, what definition of "mental disease or defect" is to be employed by courts enforcing the criminal law is, in the final analysis, a question of legal, moral and policy—not of medical—judgment. [Footnote omitted.] Among the most basic purposes of the criminal law is that of preventing a person from injuring others or, perhaps to a lesser degree, himself. This purpose and others appropriate to law enforcement are not necessarily served by an uncritical application of definitions developed with medical considerations of diagnosis and treatment foremost in mind. [Citation omitted.] Indeed, it would be coincidental indeed should concepts deriving from such disparate sources correspond closely, one to the other. Thus it is, for example, that the law has not greatly concerned itself with medical opinion about such mental states as accompany the commission of crimes of passion or of those done while voluntarily intoxicated; whatever that opinion may be, policy considerations have been thought to forbid its cutting much of a figure in court.

*See also State v. Herrera,* 286 Or. 349, 594 P.2d 823 (1979), which provides:

> Because drug dependence can have either physical or mental aspects, we conclude that evidence of drug dependency alone will not be enough evidence of a "mental disease or defect" to justify the giving of a defendant's mental disease or defect instruction.
>
> .    .    .    .    .
>
> In order to be entitled to such an instruction, further evidence which indicates that the drug dependence has resulted in a mental disease or defect—evidence beyond the mere fact of dependence itself—will have to be presented.

■ There has been a substantive change by the adoption of a comprehensive Model Penal Code. This statute affords immunization to persons from criminal liability for actions, providing they show they suffer from mental illness or retardation resulting in their inability to appreciate the criminality of their conduct or to conform their conduct to the requirements of the law. KRS 504.020 regulating the defense of mental illness is but a restatement of Section 4.01 of the American Law Institute's Model Penal Code. It necessarily follows that by the enactment of KRS 501.010(4) and KRS 501.080 that a condition of intoxication stemming from the voluntary ingestion of a substance which impairs one's judgment and control does not

afford a defense to a criminal charge unless the party shows that due to the intoxication he was unable to form a culpable mental state essential to the commission of a given offense. Appellee's reliance on voluntary intoxication cases is without merit as he does not claim that he was under the influence of any substance at the time of the alleged criminal act.

As provided in 73 ALR3d 16, *Drug Addiction as Defense*, § 2(a), page 22:

> Even those that advocate the defense recognize that in addition to proof of addiction there must at least be proof that the accused was in need of a "fix" at the time of the alleged crime, or that he was out of drugs and in fear of the approaching withdrawal symptoms.

Section 2(b), page 28 reemphasizes:

> If the defendant is relying upon the craving for narcotics as the addict's defense he must convince the jury—and get into the record for possible appellate purpose—that the defendant was in need of narcotics at the time.

The legislature has not intended that drug addiction arising from the voluntary ingestion of drugs, by itself, affords a defense to a criminal charge on the basis of mental illness (KRS 504.020). The Court of Appeals' opinion would have permitted those who voluntarily ingest drugs and eventually become addicts, without more evidence, to establish collateral defenses to criminal charges which the statute otherwise expressly denies to them. Therefore, any action in this state to recognize voluntary drug addiction, standing alone, as a mental illness is to be accomplished, if ever, by the legislature rather than by judicial decree. Voluntary drug users have not been included within the protections of KRS 501.080(2).

As stated in 73 ALR3D 16, *Drug Addiction as Defense*, Section 11, page 61:

> [N]arcotics addiction without more could not be the sole test of abnormality under the ALI test, that the defense of lack of responsibility is essentially an acknowledgement on the part of society that because of mental disease or defect, certain classes of wrongdoers are not properly the

subject of criminal punishment, and that in light of the severe penalties imposed by Congress for the possession and sale of narcotics, it would be unwise at this stage of medical knowledge for a court to conclude that those addicted to narcotics should be, for that reason alone, immune from criminal sanctions. (Citing *United States v. Freeman*, 357 F.2d 606 [2nd Cir. (N.Y.) 1966].)

In order for addiction to relieve an accused of criminal responsibility it must be proved that his addiction amounted to or caused mental illness or retardation.

We hold that a mere showing of narcotics addiction, without more, does not constitute "some evidence" of mental illness or retardation so as to raise the issue of criminal responsibility, requiring introduction of the expert's controversial testimony or an instruction to the jury on that issue. Due to the fact that no evidence was presented that Tate was in need of a fix at that time, there was an absence of the requisite evidence that at the time of the act charged, Tate had an abnormal condition of the mind which substantially impaired his behavior. In this case the weight of the evidence was to the contrary as appellee's attempts to obtain money legally and the arresting officers' testimony showed appellee's lucidity at time of arrest.

In *State v. Smith*, 219 N.W.2d 655 (Iowa 1974), it was held that the trial court properly excluded as irrelevant the defendant's proffered expert testimony of a toxicologist and pharmacologist, and a psychiatrist, that while the defendant would know the difference between right and wrong and the legal consequences of her conduct, she could not as an addict, without help, exercise any control over seeking and possessing the drug. Pointing out that the defense advocated by the defendant was squarely confronted and rejected in *United States v. Moore*, 486 F.2d 1139 (D.C.Cir.1973), the court found the majority's arguments in that case persuasive. In affirming the conviction and sentence, it was pointed out that an addict could request or obtain treatment and rehabilitation without the request or fact of treatment being used against such person. Additionally, they found that the fact that addicts voluntarily

appear daily for assistance at treatment centers reflected the irrelevancy of the testimony of the defendant's witnesses that she could not control her conduct by herself.

Therefore, the trial court did not err in excluding Dr. Pelligrini's testimony on the grounds of lack of relevancy as no *probative* evidence was offered from which a jury could reasonably infer that at the time of the criminal act, *as a result of mental illness or retardation,* appellee lacked substantial capacity to either appreciate the criminality of his acts or to conform his conduct to the requirements of law.

The opinion of the Court of Appeals is reversed and the judgment of conviction of Jefferson Circuit Court is reinstated.

All concur.

GEORGE C. HOWELL, Special Justice, sitting for STUMBO, J.