David **WEAVER**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2008–SC–000492–MR.

Supreme Court of Kentucky.

Nov. 25, 2009.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted David Weaver of first-degree burglary and of being a first-degree persistent felony offender (PFO 1). The trial court sentenced him in accordance with the jury's recommendation to twenty years' imprisonment. Because the trial court did not allow Weaver to present during the guilt phase of the trial expert testimony relevant to his defense that voluntary intoxication rendered him unable to form the specific-intent element of the burglary offense, we reverse and remand for proceedings consistent with this opinion.

## I. *FACTS.*

The facts of this case are not complex and are mostly undisputed. Weaver entered a residence in the middle of the night, apparently using a garage door opener from the victims' vehicle. The couple living in the house awoke to the smell of cigarette smoke and suspected an intruder because no one in the family smoked. The husband found Weaver and fought him. The couple reported that Weaver threatened to use a gun on the husband and that the husband struck Weaver with a baseball bat. Weaver tried to escape, but the husband held him until police arrived. At arrest, police found on Weaver a large amount of the victims' cash and sunglasses, which had been left in the trunk of the victims' vehicle. No gun was found.

Police took Weaver from the scene to the hospital, where he refused treatment. They then took him to jail, where he was lodged in the drunk tank because of his obvious intoxication. Weaver was charged with first-degree burglary and with being a first-degree persistent felony offender.

Before trial, questions arose about Weaver's criminal responsibility at the time of the alleged offenses and his competency to stand trial. Weaver alleged that he suffered from an undiagnosed bipolar condition. Following a mental health evaluation and a hearing, the trial court ruled that Weaver was competent to stand trial. But the trial court reserved ruling on the question of criminal responsibility. Weaver requested that the criminal responsibility portion of the mental health report be kept under seal unless he filed notice of an intent to introduce expert testimony relating to mental disease or defect or mental condition under Kentucky Rules of Criminal Procedure (RCr) 7.24(3)(B)(i).

Weaver later filed his notice of intent to introduce expert testimony relating to mental disease or defect or mental condition affecting guilt under RCr 7.24. Two days before trial, Weaver produced the report of Dr. John Matthew Fabian, a clinical and forensic psychologist. Dr. Fabian's report stated that defense counsel requested a forensic psychological evaluation, including assessing Weaver's mental state at the time of the incident at the victims' home. The report also addressed "Weaver's mental state relevant to liability and intoxication pursuant to Kentucky [Revised Statutes] 501.080."

The Commonwealth asserted that it could not comply with the requirement of KRS 504.070(4) that it provide ten days' notice of rebuttal witnesses because of the late disclosure of Dr. Fabian's report. It also argued that Dr. Fabian's testimony should be excluded under *Commonwealth v. Tate*, 893 S.W.2d 368 (Ky.1995). Defense counsel countered that Dr. Fabian would testify concerning "mental disease or defect" and argued that intoxication caused Weaver to have a "diminished capacity" to be able to form the criminal intent required to commit burglary.

The trial court ruled that Dr. Fabian would not be allowed to testify in the guilt phase, citing *Tate*, but also ruled that Dr. Fabian could testify in the penalty phase for mitigation purposes. Defense counsel objected, arguing that Dr. Fabian's testimony related to mental disease or defect and also argued that the testimony was relevant to Weaver's intent. Defense counsel said that the testimony was not directed at Kentucky Revised Statutes (KRS) 501.080, which concerns intoxication as a criminal defense, although Dr. Fabian's report stated that it addressed intoxication as a defense under KRS 501.080.

Weaver's defense at trial was voluntary intoxication. One of Weaver's witnesses, a man who had been present at a bar on the night of the incident, testified that he saw Weaver snorting Xanax and possibly other substances and that Weaver was heavily intoxicated. Another witness, a deputy jailer, testified that Weaver was intoxicated when he arrived at the jail, although he admitted that Weaver was able to answer questions and recall such information as a penicillin allergy at that time. Weaver himself also testified and claimed to remember having consumed numerous beers and various drugs, including cocaine, Xanax, and Oxycontin the night before the alleged burglary.

Weaver testified that he did not remember what had happened between his consuming numerous beers and drugs at the bar and his waking up in the drunk tank the next day. On cross-examination, the Commonwealth attempted to impeach his professed memory lapse by asking him whether he told Dr. Fabian that he remembered the police putting him into a police car. Weaver replied that he could have told Dr. Fabian anything, prompting the Commonwealth to remark that Dr. Fabian could be called to testify to relate what Weaver had told him.

After Weaver testified, the Commonwealth pursued this line of impeachment by calling Dr. Fabian as a witness. The Commonwealth asked Dr. Fabian if his report stated that Weaver had told him that he remembered being dragged by the police out of the victims' house. Dr. Fabian responded in the affirmative.

Despite defense counsel's argument at the bench that the Commonwealth had opened the door into further inquiry into Dr. Fabian's evaluation and report, the trial court stated that Dr. Fabian was allowed to testify for impeachment purposes only and limited defense counsel's questioning of Dr. Fabian. The trial court allowed defense counsel to ask Dr. Fabian whether he was asked to perform an evaluation of Weaver. The trial court allowed no further discussion of the purposes of the evaluation. In response to defense counsel's questioning, Dr. Fabian acknowledged that he had prepared a lengthy report but had only been allowed to testify to an isolated statement in this report.

At the conclusion of the evidence, the trial court's instructions to the jury included Weaver's voluntary intoxication defense. The trial court also instructed the jury on the elements of first-degree burglary and lesser-included offenses. Defense counsel argued in closing argument

that because of his intoxication, Weaver did not have knowledge that he lacked permission to enter the home;[1] and Weaver did not form the specific intent to commit a crime required for a burglary conviction. Rather, he argued that Weaver was at most guilty of the lesser offense of trespass. Unmoved by these arguments, the jury convicted Weaver of first-degree burglary.

At the beginning of the penalty phase, the trial court asked defense counsel whether Dr. Fabian's testimony would be presented during the proceedings to determine the sentence for the burglary or during PFO proceedings. Defense counsel elected to present Dr. Fabian's testimony during PFO proceedings. At the conclusion of this phase, the jury recommended the minimum sentence of ten years' imprisonment for the first-degree burglary conviction.[2]

Next, the Commonwealth presented evidence of Weaver's prior convictions. Dr. Fabian then testified. He indicated that he was consulted to render an opinion on Weaver's psychological status, specifically intoxication (KRS 501.080) and the effect on his mental state at the time of the offense. He reported talking with Weaver, Weaver's ex-girlfriend, Weaver's sister, and the man from the bar who observed and testified to Weaver's drinking heavily

and taking substances at the bar. Dr. Fabian also testified to reviewing the police report. He stated that Weaver had long-time problems with substance dependence, post-traumatic stress disorder, and had poor coping mechanisms. He found no evidence of current malingering.

Based on discussions with Weaver and examining other's reports and interviews, Dr. Fabian found Weaver had consumed cocaine, alcohol, Xanax, and Oxycontin on the night in question, resulting in likely substance intoxication. He testified that the specific substances Weaver ingested could have affected his memory and orientation. Dr. Fabian opined that Weaver's ingestion of these substances increased the risk that Weaver did not remember or understand or know what he was doing at the time of the incident at the victims' home.[3]

The jury then recommended the minimum sentence of twenty years' imprisonment for the PFO 1 conviction.[4] The trial court entered judgment in accordance with the jury's verdict and sentencing recommendations, and this appeal followed.

## II.  ANALYSIS.

Weaver argues that the judgment must be reversed because the trial court prevented him from presenting during the

---

1.  Defense counsel argued that Weaver might have mistaken the victims' home for a nearby homeless shelter, where Weaver intended to spend the night.

2.  First-degree burglary is a Class B felony. KRS 511.020(2). Sentences of ten to twenty years' imprisonment are permitted for Class B felony convictions. KRS 532.060(2)(b).

3.  This is also noted in Dr. Fabian's written report, which was admitted into the record during the PFO penalty phase:

    Some of the evidence gathered in this case substantiates Mr. Weaver's intoxicated state pursuant to relevant case law. If this is

true, the combination and interaction of the specific substances and the intensity and duration of his use that day would impair his actions and place him at risk for an amnesiac blackout type episode. Further, this intoxicated state would place Mr. Weaver at risk to not be aware or know what he was doing at the time of the offense.
    (Footnote omitted).

4.  One convicted of PFO 1 with of an underlying Class B felony conviction is subject to a minimum of twenty years' imprisonment. KRS 532.080(6)(a).

guilt phase of the trial Dr. Fabian's expert testimony supporting his intoxication defense. We agree.

Although neither party cites KRS 501.080, that statute sets forth when intoxication constitutes a valid defense to a crime:

Intoxication is a defense to a criminal charge only if such condition either:

(1) Negatives the existence of an element of the offense; or

(2) Is not voluntarily produced and deprives the defendant of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Weaver was charged and convicted of first-degree burglary, a crime that consists of the following elements under KRS 511.020(1):

A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

Because first-degree burglary requires the specific intent "to commit a crime[,]" voluntary intoxication is a valid defense to this crime when it results in the defendant's not having that specific intent to commit a crime because that would "negative[ ] the existence of an element of the offense.... "[5]

In his brief to this Court, Weaver does not deny unlawfully entering the victims' residence or taking their cash and sunglasses or threatening to use a gun. The Commonwealth does not deny that Weaver was intoxicated when apprehended for the alleged burglary. And Weaver does not claim to be a victim of involuntary intoxication. So the main question in dispute was whether Weaver, as a result of his voluntary intoxication, was unable to form the intent required as an element of first-degree burglary: namely, having "the intent to commit a crime" when unlawfully entering another's property.[6]

■ The trial court abused its discretion[7] in not allowing Weaver to present Dr. Fabian's testimony during the guilt phase. Voluntary intoxication is a possible defense to a crime, as recognized by statute in KRS 501.080. If the jury accepts this defense by finding that because of voluntary intoxication, the defendant did not form the intent required as an element of the offense, then the jury acquits the

---

**5.** KRS 501.080(1). As noted by BLACK'S LAW DICTIONARY (8th ed. 2004) in its definitions of *intoxication:* "Voluntary intoxication is not a defense to a general-intent crime, but may be admitted to refute the existence of a particular state of mind for a specific-intent crime."

**6.** KRS 511.020 defines the elements of first-degree burglary as including the element that: "with the intent to commit a crime, he knowingly enters or remains unlawfully in a

building...." We note that second- and third-degree burglary similarly require the same intent to commit a crime when unlawfully entering or remaining in a dwelling or other building. *See* KRS 511.030; KRS 511.040.

**7.** *See Berryman v. Commonwealth,* 237 S.W.3d 175, 179 (Ky.2007) (trial court's decision to admit or exclude evidence should only be reversed if it abused its discretion).

defendant of the offense, rather than merely reducing the punishment.

The trial court seemed to recognize this to a degree because it instructed the jury on voluntary intoxication. But the trial court erred by relegating Weaver's expert testimony on this statutory defense to the penalty phase of the proceedings. The expert's opinion about Weaver's intoxication was clearly relevant to a determination of guilt and not simply to setting a penalty.

The trial court mistakenly relied on *Tate* to support excluding Dr. Fabian's testimony. *Tate* concerned an insanity defense, not an intoxication defense.[8] *Tate* held that physical addiction was not a mental disease or defect that would render a defendant not criminally responsible for his crime.[9] The *Tate* court carefully noted that Tate did not claim he was under the influence of substances when the crime was committed.[10] This is a key distinction with the instant case in which Weaver indisputably was under the influence of alcohol and drugs at the time of the incident.

To a certain extent, the trial court's confusion may be understandable because defense counsel frequently referred to Weaver's intoxication as a "mental disease or defect." This is language more commonly associated with insanity defenses than intoxication defenses. The defense even stated that it was not offered for purposes of KRS 501.080. But defense counsel also argued that because of his intoxication, Weaver was unable to understand what was going on and incapable of forming the required intent.[11] And Dr. Fabian's written report clearly stated that it was prepared to determine whether Weaver might have a valid intoxication defense under KRS 501.080. So, despite the use of imprecise terminology, defense counsel adequately presented the basis for admitting the expert testimony on the voluntary intoxication defense to the trial court and preserved this issue for appellate review.[12] Because defense counsel

---

**8.** *Tate*, 893 S.W.2d at 369 ("At issue is whether drug addiction is a mental disease, defect, or illness for purposes of KRS 504.020.") KRS 504.020(1) provides that: "A person is not responsible for criminal conduct if at the time of such conduct, as a result of mental illness or retardation, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

**9.** *Id.* at 372. ("We hold that a mere showing of narcotics addiction, without more, does not constitute 'some evidence' of mental illness or retardation so as to raise the issue of criminal responsibility, requiring introduction of the expert's controversial testimony or an instruction to the jury on that issue.").

**10.** *Id.* ("Appellee's reliance on voluntary intoxication cases is without merit as he does not claim that he was under the influence of any substance at the time of the alleged criminal act.").

**11.** Defense counsel also at times argued that because of intoxication, Weaver had a "di-

minished capacity" to form the requisite intent for burglary. BLACK'S LAW DICTIONARY (8th ed. 2004) defines *diminished capacity* as "[a]n impaired mental condition—short of insanity—that is caused by intoxication, trauma, or disease and that prevents a person from having the mental state necessary to be held responsible for a crime."

**12.** Kentucky Rules of Evidence (KRE) 103(a)(2) provides that the issue of a trial court's ruling excluding evidence is properly preserved for review if "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Given defense counsel's oral remarks that the expert testimony was offered to show that Weaver did not know what he was doing at the time of commission of the offense and the filing of Dr. Fabian's report stating that he offered an opinion concerning KRS 501.080 and a voluntary intoxication defense, this issue was properly preserved under the current version of KRE 103. (The trial took place in 2008,

properly informed the trial court of the defendant's intent to present Dr. Fabian's expert testimony in the guilt phase of the trial, the issue was properly preserved for appeal. And we believe the trial court committed reversible error when it prevented Weaver from presenting Dr. Fabian's testimony to the jury until after they had decided Weaver's guilt.[13] Because this error was properly preserved, we could affirm Weaver's conviction only if this error was harmless.[14]

■ Weaver argues that the trial court's exclusion of Dr. Fabian's testimony from the guilt phase deprived him of his constitutional right to present a defense. Obviously, the trial court did not completely deprive Weaver of the opportunity to present an intoxication defense because Weaver was allowed to present other evidence concerning his intoxication in the guilt phase; and the trial court instructed the jury on voluntary intoxication as a defense. While the trial court's exclusion was error, it is not necessary to our deci-

sion to determine whether this error actually resulted in a constitutional violation. Consequently, we express no opinion on whether a constitutional violation occurred here.

Whether or not the error is deemed to be of constitutional magnitude, we cannot conclude the error was harmless because to find that the expert testimony would have little or no effect would be sheer speculation. After Dr. Fabian was allowed to express his opinion in the penalty phase, his testimony may have had some impact because the jury recommended the minimum sentence for PFO 1. Further, Dr. Fabian's testimony was relevant to Weaver's intoxication defense[15] and potentially helpful to the jury in explaining how the specific substances ingested may have affected Weaver's intent at the time of the incident.[16]

### III. CONCLUSION.

Because the trial court erred by preventing Weaver's presentation of Dr. Fabi-

---

one year after the current version of KRE 103 became effective.)

> In contrast to earlier versions of KRE 103, the current version does not require the presentation of avowal testimony to preserve the issue of a trial court's exclusion of testimony.

**13.** See Burnham v. State, 497 So.2d 904, 905 (Fla.App.1986) (holding that under Florida precedent, trial court erred in excluding expert testimony on intoxication as voluntary intoxication was a valid defense to a specific intent crime, and expert testimony is relevant to a disputed voluntary intoxication defense). Although we have held in a collateral appeal that defense counsel's failure to offer expert testimony on intoxication did not rise to the level of ineffective assistance, especially in light of lay testimony concerning intoxication, we also acknowledged in that same case that an expert's opinion testimony on intoxication might potentially aid a defendant in presenting a voluntary intoxication defense: "Although it is *possible* that testimony from an

expert might have convinced the jury that Appellant was even more intoxicated, it is unlikely that this would have changed the outcome of the trial." Mills v. Commonwealth, 170 S.W.3d 310, 329 (Ky.2005), overruled on other grounds by Leonard v. Commonwealth, 279 S.W.3d 151, 159 (Ky.2009)

**14.** See RCr 10.26 (reviewing unpreserved issues for palpable error only); RCr 9.24 (even preserved issues do not merit reversal if error "does not affect the substantial rights of the parties.").

**15.** See KRE 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

**16.** See KRE 702 (one requirement to admit expert testimony is that the testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue....").

an's testimony during the guilt phase,[17] the judgment is reversed; and the case is remanded to the trial court for proceedings consistent with this opinion.

All sitting. ABRAMSON, NOBLE, SCHRODER, and VENTERS, JJ., concur.

SCOTT, J., dissents by separate opinion, in which CUNNINGHAM, J., joins.

SCOTT, J., dissenting:

I must respectfully dissent. The fact that one does not remember the details of a crime does not mean that he or she did not, at the time, have the intent to commit it. The two are simply not synonymous. In this instance, the defendant had valuables that he had taken from the victim's car trunk and used the door opener from the car to enter the house. Notably, the expert could only add that the "intoxication *could have* affected his memory and orientation." Moreover, with respect to the expert's testimony, I do not believe that the disallowance of such evidence was harmful. While the defense of intoxication may allow for a defense expert witness, lay persons—jurors—fully understand the mood altering effects of mixing drugs and the resulting intoxication. For these reasons, I believe any error was harmless. I would thus affirm.

CUNNINGHAM, J., joins this dissent.

---

**17.** Because we reverse solely on this ground, we do not reach the other issue presented by Weaver—namely, his allegation of prosecutorial misconduct in the use of a "send a message" statement in penalty phase closing argument.