**John Marrion TERRY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 2009–SC–000497–DG.**

Supreme Court of Kentucky.

Oct. 21, 2010.

Rehearing Denied March 24, 2011.

Bruce P. Hackett, Chief Appellate Defender, Cicely Jaracz Lambert, Assistant Appellate Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

We granted discretionary review in this case to determine the correctness of the Kentucky Court of Appeals' decision construing RCr 7.24(3)(B)(i) as precluding certain expert witness testimony. For the following reasons, we reverse the Court of Appeals, reverse Appellant's conviction, and remand this case to the trial court for further proceedings consistent with this opinion.

## I. *Background*

In March 2004, Linda Elmore's body was found under an overpass in Louisville, Kentucky covered in debris and riddled with over one hundred stab wounds. Homeless individuals, including Appellant, John Marrion Terry, commonly frequented the overpass area. At the time in question, Appellant was forty-three years of age with an eighth-grade education.

Appellant attracted the attention of Detective Gary Huffman of the Louisville Metro Police Department, the lead investigator in this case, after Appellant provided the detective with certain specifics regarding Elmore's murder. In particular, Appellant told Huffman that during the night in question, he witnessed Tonk, a drug

dealer, fleeing the area. Over the next seven months, Huffman provided Appellant with food and money. Huffman also drove Appellant around Louisville searching for Tonk and getting details about what Appellant remembered concerning the night of Elmore's murder.[1] Their encounters continued until approximately November 2004, when Appellant admitted in a recorded statement to killing Linda Elmore.

In the recorded statement, Appellant claimed, among other things, that: (1) he and Elmore, whom he described as a twenty-year-old "crack-head," were engaging in a sexual activity, during which time Elmore was partially unclothed; (2) at some point, Elmore attacked him with a knife that she had concealed in her purse; (3) in self defense, he managed to garner the knife, kill Elmore, by, in part, stabbing her beneath her right breast; and (4) after killing Elmore, he covered her body with a blanket.

On the strength of this confession, Appellant was indicted for murder and tampering with physical evidence.

The day of trial, Appellant moved to admit expert testimony from Dr. Solomon Fulero regarding false confessions. The Commonwealth opposed the motion, arguing that under RCr 7.24(3)(B)(i) Appellant was required to provide twenty-days' notice because Fulero's testimony addressed a mental condition and related to an issue of guilt. The trial court agreed with the Commonwealth and refused Fulero's testimony, citing Appellant's lack of notice.

During trial, the Commonwealth presented no physical evidence linking Appellant to the crime. To the contrary, certain physical evidence tended to exculpate Appellant, e.g., hair found in the victim's hand did not match Appellant and neither did the DNA under her fingernails. Additionally, Appellant's description of Elmore was inaccurate, as she was 53 years old at the time of her death and was found fully clothed. Furthermore, no blanket or purse was recovered from the scene. Indeed, the Commonwealth's entire case hinged on Appellant's confession to the crime.

Appellant defended on grounds that his confession was unreliable and, testifying on his own behalf, told the jury that he made the statements, in part, because he wanted to continue to receive money from Huffman. But, based solely on Appellant's confession, the jury convicted him of first-degree manslaughter and tampering with physical evidence.

On direct appeal to the Kentucky Court of Appeals, Appellant argued that the trial court abused its discretion by applying RCr 7.24(3)(B)(i) to Fulero's expert testimony. The Court of Appeals affirmed the conviction and held RCr 7.24(3)(B)(i) applicable because Fulero's testimony addressed Appellant's mental condition and related to an issue of guilt. This appeal followed.

Appellant contends that the trial court abused its discretion and misapplied the notice requirement in RCr 7.24(3)(B)(i) when it excluded Fulero's expert testimony on false confessions because: (1) the rule only applies to the mental state of a defendant at the time of the commission of the crime, which, in this case, Fulero's testimony did not address; and (2) Fulero's testimony was offered as evidence regarding police interrogations and not as

---

1. Huffman also provided Appellant with shoes to replace those taken by the police for forensic testing.

evidence directly addressing Appellant's mental condition.

The Commonwealth responds by noting that a plain reading of RCr 7.24(3)(B)(i) defies the notion that the rule only applies to the mental status of the defendant *at the time* of the offense, but rather is applicable anytime the testimony relating to a mental condition bears upon "the issue of [the defendant's] guilt." The Commonwealth further contends that because Fulero's testimony "consistently discussed psychology and the psychological underpinnings of a false confession" and because "[t]he primary definition of psychology deals with mental processes and behavior," Fulero's testimony did in fact address Appellant's mental condition and therefore triggered RCr 7.24's notice requirement.

We hold that the notice requirement in RCr 7.24(3)(B)(i) was not triggered in this case and thus the trial court erred when it excluded Fulero's testimony.

In keeping with the adversarial nature of a criminal trial, we have held that a party to a criminal proceeding is generally not required to provide a list of witnesses to the opposing party. *Lowe v. Commonwealth,* 712 S.W.2d 944 (Ky.1986) (*citing King v. Venters,* 596 S.W.2d 721 (Ky. 1980)). The underlying premise of this rule is reiterated in KRS 500.070(2), which provides, "no court can require notice of a defense prior to trial time." But, as noted by the United States Supreme Court, a criminal trial is not "a poker game in which players enjoy an absolute right always to conceal their cards until played," and thus we recognize that there are circumstances where parties must divulge their witnesses. *Williams v. Florida,* 399 U.S. 78, 85, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). RCr 7.24(3)(B)(i) provides such a circumstance and requires a defendant to divulge certain experts that he intends to call, to wit:

> If a defendant intends to introduce expert testimony relating to a mental disease or defect or any other mental condition *of the defendant bearing upon the issue of his or her guilt* or punishment, the defendant shall, at least 20 days prior to trial, or at such other time as the court may direct upon reasonable notice to the parties, notify the attorney for the Commonwealth in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

(emphasis added). As is clear, when a defendant intends to introduce an expert (1) who will testify to a mental disease or defect or any other mental condition of the defendant and (2) that testimony bears upon the issue of the defendant's guilt or punishment, RCr 7.24(3)(B)(i) is triggered and the expert must be disclosed.

The federal courts, interpreting the nearly identical federal rule,[2] and noting the Advisory Committee Notes, have found the rule necessary, because:

> in all circumstances in which the defendant plans to offer expert testimony concerning his mental condition *at the time of the crime charged,* advance disclosure to the government will serve to permit adequate pretrial preparation, to pre-

---

**2.** Fed.R.Crim.P. 12.2(b) provides in pertinent part:

> A defendant who intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the is-

sue of guilt or (2) the issue of punishment in a capital case, the defendant must—within the time provided for filing a pretrial motion or at any later time the court sets—notify an attorney for the government in writing of this intention. . . .

vent surprise at trial, and to avoid the necessity of delays during trial.

*United States v. Davis*, 93 F.3d 1286, 1294 (6th Cir.1996) (internal citations and quotations omitted); *United States v. Mogenhan*, 168 F.R.D. 1, 2 (D.D.C.1996) (internal citations and quotations omitted) (emphasis added). In other words, "the rule's purpose is to require defendants to give notice prior to trial that they intend to introduce expert testimony of mental disease or defect on the theory that such mental condition is inconsistent with *the mental state required for the offense charged.*" *United States v. Dupre*, 339 F.Supp.2d 534, 538 (S.D.N.Y.2004) (emphasis added).

This Court has interpreted RCr 7.24(3)(B)(i) as being applicable "only when a defendant intends to offer evidence that *directly* bears on the issues of guilt or punishment." *Powell v. Graham*, 185 S.W.3d 624, 630 (Ky.2006). We further concluded in *Powell* that RCr 7.24(3)(B)(i) "clearly contemplates psychological evidence that is to be used during trial, for example, to prove a lack of guilt due to mental illness at the time of the crime.... " *Id.*

■ In any event, a trial court's ruling on the admission of expert testimony should not be disturbed unless there is an abuse of discretion. *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368, 387 (Ky. 2000). The test to determine an abuse of discretion turns on whether the decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575 (Ky.2000).

## II. *Analysis*

■ With these principles in mind, we turn to the case at bar. Here, we are asked whether an expert [3] who testifies on behalf of a defendant regarding general scientific principles and studies surrounding police interrogations [4]—none of which were conducted in response to the defendant's case—speaks to (1) the defendant's mental defect, disease, or condition and (2) whether such testimony directly bears on the issue of the defendant's guilt. We take each question in turn, answering both in the negative.

### A. Whether the Expert Testified to Appellant's Mental Defect or Condition

In this case, Fulero testified by avowal that, inter alia: (1) in general, people are not aware that police can tell suspects things that are not true; (2) some police tactics "put the suspect in the position of feeling like their guilt has already been conclusively established"; (3) some suspects confess, although not guilty, to mitigate what they perceive as a hopeless situation; and (4) he had not examined, and would not examine, Appellant.

At first blush, we agree that Fulero's testimony regarding the study of police interrogations and tactics seems to relate to Appellant's mental status in some respect. Indeed, it is not far-fetched to surmise that these studies aid the trier of fact in determining the mental status of Appellant when he was interrogated. However, given the parameters of the avowal testimony in this case and the confines of RCr

---

**3.** The expert status of Fulero was not addressed by the lower courts and thus we do not pass on this issue in this case.

**4.** Whether the scientific underpinnings of Fulero's testimony satisfy *Daubert v. Merrell*

*Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) is not addressed by the lower courts and thus we do not pass on this issue.

7.24(3)(B)(i), we do not believe that Fulero's testimony addressed Appellant's mental disease, defect, or condition, as it must to invoke the rule.

RCr 7.24(3)(B)(i) specifically states that the testimony must relate to a mental disease or defect or any other mental condition *"of the defendant."* As is clear from the avowal testimony, Fulero did not, and indeed could not, testify to the mental condition of Appellant because Fulero never examined him. And while Fulero could offer testimony regarding the science surrounding confessions which would aid the jury in its determinations, he would not have been able to say that those scientific findings were specifically applicable to Appellant without an examination. We therefore conclude that RCr 7.24(3)(B)(i) was simply not triggered in this case.

Notwithstanding our conclusion that Fulero's testimony did not come within the ambit of RCr 7.24(3)(B)(i), we recognize that the jury could draw from Fulero's testimony certain inferences regarding Appellant's mental condition during his confession. However, we do not think that RCr 7.24(3)(B)(i) goes so far as to cover these inferences. Moreover, we agree with the Court of Appeals' conclusion that "any expert testimony relating to a claim that Terry was coerced or improperly persuaded to make a false confession would relate to 'his mental condition' when admitting guilt."

Yet, after considering the parameters of RCr 7.24(3)(B)(i) and the subject testimony in this case, it appears to us that Fulero was not testifying to "a claim that Terry was coerced or improperly persuaded." Instead, Fulero's testimony was confined to police practices and only enveloped their interrogative techniques. Again, while the jury could have drawn an inference that Appellant was indeed coerced, and while Appellant himself testified to this effect, Fulero's avowal reveals that he could have never made such a statement—rather he would have merely provided the jury with expert testimony, aiding them in assessing Appellant's confession.[5] Appellant offered Fulero's testimony to specifically confront the preconceived notion that anytime a defendant confesses, that confession is reliable. Thus, Fulero's testimony would have provided a scientific basis within which to analyze this notion, and would have aided the jury in determining whether Appellant's confession was reliable or not.[6] However, had Fulero expressed an opinion on the reliability of Appellant's confession, our analysis would differ—but such was not the case.

Given the bounds of the avowal, we find that the offered testimony sufficiently demonstrates that Fulero could not testify to Appellant's mental disease, defect, or any other mental condition. Rather, Fulero's testimony addressed police interroga-

---

**5.** KRE 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*See Jenkins v. Commonwealth,* 308 S.W.3d 704, 713 n. 11 (Ky.2010) (*citing Stringer v. Commonwealth,* 956 S.W.2d 883, 892 (Ky. 1997)).

**6.** *See* KRE 401 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

tive practices and their potential effects, thus we hold that the trial court erred in this regard.

## B. Whether Fulero's Testimony Bears on the Issue of Guilt

■ We next turn to Appellant's contention that Fulero's testimony did not trigger RCr 7.24(3)(B)(i) because it did not bear on an issue of guilt. Here, as explained above, Fulero's testimony addressed police tactics during interrogations, and was offered by Appellant, coupled with his own testimony, so as to put the truthfulness of his confession in doubt.

We recognize that a plain reading of RCr 7.24(3)(B)(i) does not confine the rule to the defendant's state of mind *at the time of the offense*, but is instead applicable when the expert testimony relates to the broader issues of "guilt or punishment." However, our precedent reveals that the testimony cannot be tangentially related to the issue of guilt, but, conversely must be *direct*.

In *Powell*, we were called on to answer whether RCr 7.24 is triggered when a defendant moves to suppress certain evidence on the ground that he was mentally incompetent at the time he made incriminating statements. 185 S.W.3d at 630. In finding that RCr 7.24 did not apply, we held that "the rule is applicable only when a defendant intends to offer evidence that *directly* bears on the issues of guilt or punishment, not in a situation such as this where evidence of the defendant's mental instability relates to whether other evidence is to be barred from trial and therefore has only a tangential bearing on guilt." *Id.* (emphasis added). And although the Court of Appeals distinguished *Powell* on procedural grounds, we expressly addressed whether a defendant's mental status at the time he makes incriminating statements directly relates to the issue of

guilt and concluded: "such evidence is significantly removed from any ultimate decision as to guilt or punishment...." *Id.*

Similarly, here, we are called on to answer whether Fulero's testimony directly relates to the issue of Appellant's guilt, and thus whether it falls within the ambit of RCr 7.24(3)(B)(i). We again find, as we did in *Powell*, that the testimony regarding Appellant's state of mind at the time he made incriminating statements does not directly relate to the issue of his guilt so as to trigger RCr 7.24(3)(B)(i). Therefore, we hold that the Court of Appeals erred in upholding the trial court's exclusion of the evidence on this ground.

## C. Effect of the Error

■ Having decided that the lower courts erred by excluding Fulero's testimony, we now must determine the effect that error had on Appellant at trial. The Appellant argues that the "exclusion of [Fulero's] testimony prevented [Appellant] from his rights to fundamental fairness and to present a defense under Kentucky Constitution § 11 and the Sixth and Fourteenth Amendments to the United States Constitution" and therefore reversal is required. The Commonwealth posits that any error committed in this regard was harmless.

Admittedly, where an issue is preserved at trial, as it was here, and is found to be erroneous on appeal, reversal is not automatic. RCr 9.24, provides:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsis-

tent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

However, our decision in *Weaver v. Commonwealth,* is sufficiently dispositive regarding the effect of the error in this case. 298 S.W.3d 851 (Ky.2009). There, the trial court refused to allow an expert to testify regarding the defendant's intoxication defense, but did permit the defendant to offer other evidence regarding his intoxication. *Id.* at 857. On appeal before this Court, the appellant argued "the trial court's exclusion of [expert] testimony from the guilt phase deprived him of his constitutional right to present a defense." *Id.* There, we found error in the trial court's exclusion of the expert, but noted that the appellant was not completely denied his right to present his defense since the trial court did indeed permit him to present evidence regarding his intoxication through other means. *Id.* Notwithstanding other evidence supporting his intoxication defense, we declined to address the constitutional nature of the error and held:

> "Whether or not the error is deemed to be of constitutional magnitude, we cannot conclude the error was harmless because to find that the expert testimony would have little or no effect would be sheer speculation.... Further, [the expert's] testimony was relevant to [the appellant's] intoxication defense and potentially helpful to the jury in explaining how the specific substances ingested may have affected [the appellant's] intent at the time of the incident."

*Id.* Thus, we reversed the appellant's conviction in that case.

Similarly, here, while Appellant did indeed introduce evidence of the coercive nature of the interrogation (as he testified to this effect) he was precluded from pro-

viding an expert to help the trier of fact determine whether his confession was coerced—the essential question presented at trial. We therefore conclude that because the Commonwealth's case was based entirely on Appellant's confession and because his only defense was to call that confession into doubt, the denial of an expert who could provide the context and foundation supporting his position was likely harmful and thus we can not say the trial court's exclusion of the evidence, based on the avowal, was harmless.

### III. *Motion to Strike Juror*

Appellant next argues that the trial court abused its discretion when it refused to strike juror 182208. However, because we reverse on other grounds and because this issue is unlikely to resurface on remand, we express no opinion on this issue.

### IV. *Conclusion*

For the foregoing reasons, we reverse the Court of Appeals, vacate Appellant's conviction, and remand this case to the trial court for further proceedings consistent with this opinion.

All sitting. MINTON, C.J.; CUNNINGHAM, SCHRODER, and VENTERS, JJ., concur. ABRAMSON and NOBLE, JJ., concur in result only.