**Ronald EWING, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 14, 1965.

Wesley Bowen, Newport, for appellant.

Robert F. Matthews, Atty. Gen., F. E. Wood, Asst. Atty. Gen., Frankfort, for appellee.

DAVIS, Commissioner.

Appellant was indicted and tried on a charge of maiming Robert Evans "by putting his eye out." KRS 435.160. The jury found appellant guilty of the common law misdemeanor of assault and battery, and fixed his punishment at a fine of $500 and imprisonment in the county jail for twelve months.

Appellant presents three assignments of error: (1) the court should have directed a verdict of acquittal, pursuant to motions made at the conclusion of the case for the prosecution and after all the evidence was in; (2) the verdict is so palpably against the evidence as to require reversal; and (3) error was committed in receiving non-medical testimony relating to the loss of sight by the prosecuting witness.

On March 11, 1964, the appellant and the prosecuting witness, Robert Evans, were patrons of a beer tavern in Covington known as "Jimmy's Lounge." The two men had not entered the tavern together, nor is there any indication that they had known each other, except casually.

According to the prosecuting witness, the appellant confronted him near the bar of the tavern and presented a pistol toward him in a threatening manner. Appellant accompanied the flourishing of the weapon with the admonition to Evans "if he (Evans) pulled his hand out of his pocket that he would kill him." Thereupon, Evans undertook to depart the premises via a rear door. In this undertaking he was closely followed by appellant, and just after the two men had emerged from the building, appellant struck Evans in the face with the pistol, inflicting upon him a wound resulting in the loss of sight in his left eye.

Appellant's version of the difficulty is that Evans had previously accosted appellant in the tavern; that Evans had used threatening language and asserted his physical prowess menacingly toward the fifteen to twenty patrons of the tavern, especially including appellant. Appellant said that he was fearful that Evans would carry out these generalized threats, and that he did draw the pistol on Evans and order Evans to leave. Expressing his fear that Evans would probably return and do him harm, appellant followed Evans as the latter made exit through the rear doorway. Just as Evans "wretched" for the door knob, appellant testified, Evans drew a knife and wheeled to stab appellant; at this juncture appellant smote Evans with the pistol, in his own necessary self defense. Evans then dropped the knife, which appellant picked up and placed upon a table. (Nobody else saw the knife thereafter.)

Evans, and other witnesses for the prosecution, specifically contradicted appellant as to the knife; Evans avowed that he was completely unarmed and had not made any threat toward appellant. From the fore-

going summary of the evidence it is apparent that a jury issue was presented. Appellant was not entitled to a directed verdict, either at the close of the Commonwealth's case or on the conclusion of all the evidence.

It is equally clear that the verdict is not palpably against the evidence. The jury had the right to accept the version of the prosecution. Indeed, the substantial preponderance of the evidence supports the theory of the Commonwealth. An appropriate self-defense instruction was submitted, but the jury did not believe that appellant had established his entitlement to acquittal on that ground. Since the appellant admitted striking Evans it was incumbent on appellant to excuse that action. Harvey v. Com., Ky., 318 S.W.2d 868; Monroe v. Com., Ky., 343 S.W.2d 143.

What we have said disposes of the first two points presented. We turn now to consideration of the final point, namely, that it was error to permit Evans to testify that the pistol blow induced the loss of his eye sight. In support of this argument the appellant presents Harvey v. Com., Ky., 318 S.W.2d 868; Jack v. Com., 222 Ky. 546, 1 S.W.2d 961; L. & N. RR. Co. v. Com., 231 Ky. 554, 21 S.W.2d 981, and Conley v. Com., 265 Ky. 78, 95 S.W.2d 1094. Also cited is 20 Am.Jur., Evidence, Sec. 858, p. 719. The burden of this contention is that it is not proper to permit lay testimony as to matters requiring expert or scientific training and skill.

Examination of the last three cases just cited (Jack v. Com., L. & N. RR. Co. v. Com., and Conley v. Com.) reveals that none of them is apposite to the situation at hand. In the Jack and Conley cases this court rejected evidence as to identifying bullets from firearms when offered by persons not skilled in ballistics. In the L. & N. case the question at issue had to do with what had caused the deepening of a ford across a stream. Non-expert witnesses were not permitted to express opinions as to the cause of the ford's increased depth.

In Harvey v. Com., Ky., 318 S.W.2d 868, a deputy coroner had undertaken to describe the organs within the body of a homicide victim; the officer was not a doctor, nor did he possess any background of education or experience which could warrant his expression of medical opinion. The court held that it was proper to exclude the evidence from that witness. But in the same opinion the court held that the circumstances of the death from gunshot wound were such that no expert testimony was required. The pertinent language of that opinion is:

"Here Smith was shot near the middle of his body, immediately fell, was rushed to the hospital in an ambulance and died within less than an hour after he was shot. Therefore, any layman of average intelligence would know from his knowledge and experience that the bullet wound was the cause of death. In such circumstances it is not necessary to prove by a physician that the wound inflicted was the cause of death." Ibid. 318 S.W.2d 870.

In the case before us Evans was competent to testify that he was struck in the eye; that during his entire life until that blow he had enjoyed normal vision in the eye, and that thereafter his vision was gone. Long ago a layman, called upon to explain how his sight had been restored, exclaimed, " * * * one thing I know, that though I was blind, now I see." John 9:25. Here we have the converse. It is our view that the evidence was competent. Cf. White v. Com., Ky., 360 S.W.2d 198.

It is suggested by appellant that even though the jury did not convict him of mayhem, the evidence that Evans had suffered the loss of sight was so prejudicial as to infect the verdict with reversible error. We do not agree. As noted, it is our view that the evidence was competent

to establish the mayhem charge, and certainly the jury's verdict of guilt as to the lesser offense may not be said to be tainted by its admission.

The judgment is affirmed.