Kenneth E. KEY, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–CA–639–MR.

Court of Appeals of Kentucky.

May 22, 1992.

David W. Hupp, Segal, Isenberg, Sales Stewart & Cutler, Louisville, for appellant.

Chris Gorman, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

Before LESTER, C.J., and HAYES and JOHNSON, JJ.

JOHNSON, Judge.

Appellant, Kenneth E. Key (hereinafter "Kenneth"), defendant below, was convicted by a Campbell Circuit Court jury on January 28, 1991, of assault in the second degree, wanton endangerment in the first degree, criminal mischief third degree, and persistent felony offender second degree. The court sentenced Kenneth to concurrent sentences resulting in a total sentence of confinement in the penitentiary for a period of five years. In this appeal as a matter of constitutional right, Kenneth alleges that the trial court committed reversible error in three ways: (1) Kenneth was entitled to a directed verdict of acquittal as to the charge of assault in the second degree due to the insufficiency of evidence presented by the Commonwealth; (2) Kenneth was entitled to a directed verdict of acquittal as to the charge of wanton endangerment in the first degree due to the insufficiency of evidence presented by the Commonwealth; and (3) Kenneth was entitled to a mistrial when a juror failed to disclose during voir dire that he knew Kenneth. We find that none of Kenneth's alleged grounds for error has merit and, accordingly, affirm the trial court.

The criminal charges against Kenneth arose out of a disturbance that occurred on August 25, 1990, at the A.J. Jolly Park in Campbell County, Kentucky. Kenneth was camping at the park with his brother, Kevin Key (hereinafter "Kevin"), and others. In a separate group also camping at the park on that night were Ernest Springer, Carolyn Deaton (Springer's mother), Kenneth Deaton (Springer's stepfather, hereinafter "Mr. Deaton"), Roy Carpenter and others. The actions relevant to the issues on appeal include: Springer testified that while he was looking for a woman from their camping party, he came upon Kevin at the Key campsite, and asked Kevin if he had seen a woman. Springer testified that Kevin, who was drunk and belligerent, cursed him and pushed him. Springer then hit Kevin in the jaw. Kevin then pulled a gun out from under his jacket, and Kenneth knocked Springer to the ground by hitting him in the back with a baseball bat. While lying face down on the ground, Springer was also hit in the head with the gun by Kevin. Springer further testified that while Kevin was holding the gun near Springer's head, Kevin fired the gun two or three times. In addition to the injuries to his head from being struck with the gun that caused bleeding and required stitches, Springer also testified that the blow from the baseball bat knocked him to the ground, knocked the breath out of him, and caused him to suffer bruised ribs. A few minutes later at the Springer campsite, Kenneth pointed the gun within 1½ to 2 feet of Mr. Deaton's face, and asked him, "Do you want some of this?" Kenneth then fired the gun twice near Mr. Deaton's feet causing gravel to fly up and strike Mr. Deaton. Carpenter testified that when Kenneth fired the gun, Kenneth was about four feet away from Carpenter, and the

bullet hit the ground about three feet in front of Carpenter.

## I. Physical Injury

 Kenneth argues that the proof presented by the Commonwealth was not sufficient to get the case to the jury, whereby the trial court erred in not sustaining his motion for a directed verdict of acquittal. The issue concerns whether there was substantial evidence in establishing that Springer suffered a "physical injury" as required under KRS 508.020, Assault in the second degree. "Physical injury" as defined at KRS 500.080(13), and used in the jury instructions in this case means "substantial physical pain or any impairment of physical condition."

Kenneth's characterization of the injuries suffered by Springer, the crime victim, when he was struck in back with the ball bat as "it simply knocked the wind out of him and supposedly bruised his ribs" is disturbing. To argue that such trauma would not *both* result in "substantial physical pain", and "impairment of physical condition" stretches the human imagination.[1] Further, as noted by the Commonwealth, *Meredith v. Commonwealth*, Ky.App., 628 S.W.2d 887, 888 (1982), provides that the requirements of KRS 508.020(1)(b) are met when *any* injury results. The court in *Meredith* stated that "the words 'impairment of physical condition' simply mean 'injury'." Kenneth's argument that expert testimony is required to prove the injury is totally without any authority, and contrary to *Ewing v. Commonwealth* Ky., 390 S.W.2d 651, 653 (1965), which holds that a victim is competent to testify about his own injuries. Since medical proof is not an absolute requisite to prove serious physical injury, *Prince v. Commonwealth*, Ky.App., 576 S.W.2d 244, 246 (1978), it certainly follows that it is not an absolute requisite to prove physical injury. We find that there

is substantial evidence in the record to support the conviction of assault in the second degree.

## II. Wanton Endangerment

 Kenneth next argues that the Commonwealth failed to present sufficient evidence to get the charge of wanton endangerment in the first degree to the jury, whereby the trial court erred in not sustaining his motion for directed verdict of acquittal. Kenneth contends that the requirement of KRS 508.060, wanton endangerment in the first degree, that the conduct "creates a substantial danger of death or serious physical injury to another person" is not met by "merely pointing a gun at Kenneth Deaton." However, once again while Kenneth makes every attempt to minimize the seriousness of his own criminal conduct, the law of this Commonwealth holds otherwise. *Thomas v. Commonwealth*, Ky., 567 S.W.2d 299 (1978), and *Commonwealth v. Clemons*, Ky., 734 S.W.2d 459 (1987), both hold that the pointing of the weapon at another person is sufficient evidence to support the charge of wanton endangerment. Under this statute,[2] it makes no difference if the victim is a police officer. We hold that the pointing of a gun, whether loaded or unloaded (provided there is reason to believe the gun may be loaded) at any person constitutes conduct that "creates a substantial danger of death or serious physical injury to another person" in violation of KRS 508.060. In the instant case, the wanton conduct also included the shooting of the gun near the victims. Either conduct, independent of the other, is sufficient to meet the requirements of KRS 508.060. The trial court is affirmed as to this conviction.

## III. Juror Misconduct

The final issue on appeal raised by Kenneth concerns the failure of juror 103, Wil-

---

1. KRS 500.080(13) requires only either of these results, not both.

2. The Legislature has enacted an assault statute, KRS 508.025, Assault in the third degree, which criminalizes certain conduct directed at peace officers and employees of detention facilities.

liam Schuelthier, to disclose during voir dire that he knew Kenneth.

 All defendants are entitled to the right of due process of law which includes the right to an unbiased decision by an impartial jury. *Grooms v. Commonwealth*, Ky., 756 S.W.2d 131, 134 (1988). If an unqualified juror participates in the verdict, the defendant's right of due process has been violated. *Sanders v. Commonwealth*, Ky., 801 S.W.2d 665, 669 (1990). Doubts concerning whether or not there was bias must be resolved in the defendant's favor. *Randolph v. Commonwealth*, Ky., 716 S.W.2d 253, 255 (1986). The defendant's right to challenge a juror includes the incidental right that the information elicited on voir dire shall be true. *Id.* at 256. A juror is qualified to serve unless there is a showing of actual bias. *Polk v. Commonwealth*, Ky.App., 574 S.W.2d 335 (1978); *Watson v. Commonwealth*, Ky., 433 S.W.2d 884 (1968). "It is incumbent upon the party claiming bias or partiality to prove the point." *Polk, supra*, at 337.

Kenneth filed a Motion for Mistrial. However, Kenneth did not present any testimony from the juror in question. Nor did Kenneth present any evidence showing that the juror during the trial was aware of having any prior knowledge of Kenneth or his family. Kenneth's father, James Key (hereinafter "James"), testified at the hearing on the Motion for Mistrial that he had known the juror for 40 years, but had not seen him for 20–25 years. He also testified that their two families had known each other well, and that he would expect the juror to recognize the "Key" name. The evidence presented by Kenneth in support of his Motion for Mistrial is nothing more than speculation that the juror knew Kenneth. Not only did Kenneth fail to establish that the juror knew Kenneth, but he failed to show how if at all the juror knew Kenneth. The use of the words "know" and "knew" in referring to human relationships have many meanings. One

person may "know of" another person, or they may have "known" them in the past. Or, person "A" may "know" person "B", but person "B" may not "know" person "A". And, of course, a juror merely "knowing" a defendant does not disqualify the juror. Questions concerning how and when the juror knew the defendant must be answered in order to determine if there is a juror bias.

The trial court in ruling on the Motion for Mistrial could only base its decision on the evidence presented at the hearing and the trial. There is nothing in the record to indicate there was any juror bias to support Kenneth's claim that the court's ruling was clearly erroneous in denying the Motion for Mistrial. *Caldwell v. Commonwealth*, Ky., 634 S.W.2d 405 (1982); *Tarrence v. Commonwealth*, Ky., 265 S.W.2d 40 (1954).

Accordingly, we find on all grounds that the appeal is without merit, and the trial court is affirmed.

All concur.