**COMMONWEALTH of Kentucky, Appellant,**

v.

**Allen HOCKER, Jr., Appellee.**

No. 92–SC–966–DG.

Supreme Court of Kentucky.

Nov. 24, 1993.

Chris Gorman, Atty. Gen., Dina Abby Jones, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellant.

Thomas L. Conn, Fayette County Legal Aid, Inc., Lexington, for appellee.

SPAIN, Justice.

Following his conviction by a Fayette County jury of first-degree assault and the imposition of a sentence of imprisonment for ten years, the defendant, Allen Hocker, Jr., appealed to the Court of Appeals. A divided panel of that court reversed the conviction and remanded for a new trial, holding that the evidence was insufficient as a matter of law to sustain the conviction. Having granted review, we now reverse the Court of Appeals and affirm the judgment and sentence of the Fayette Circuit Court. In our opinion, the trial court properly denied a motion for a directed verdict of acquittal on the first-degree assault charge, and accordingly, the verdict of the jury was supported by sufficient evidence.

While driving his car in Lexington near his residence on September 26, 1990, Cleston Cannon stopped when he came upon an altercation between five youths (the appellee Hocker and his co-defendants) on one side and one lone youth on the other. One of the five, Beckham, walked up to Cannon's car and asked, "What are you looking at, you white mother-fucker?" Cannon replied, "I ain't looking at nothing." With that, a second youth, Booker, approached the car and struck Cannon in the face with his fist. Cannon then parked his car, got out holding his pocketknife, and walked toward the men, one of whom was the appellee, Hocker. The fight that ensued also involved two baseball bats, a wooden plank, and a pop bottle, all of which were used to assault Cannon. He was also wrestled to the ground where he was kicked, punched, and beaten.

Cannon's mother found him lying on the ground, bleeding and unable to get up, with his left eye swollen shut. She testified he also had a hole in the side of his head and bruise marks across his chest, and kidneys. She stated she was afraid he would die.

Hospital records, properly certified, were introduced into evidence and reflected that Cannon was kept in the intensive care unit for forty-eight hours followed by hospitalization for six additional days. He suffered multiple facial contusions and lacerations requiring suturing above his eye and in his lip. Several of his teeth were knocked out but were apparently successfully reimplanted. He sustained a skull fracture as well as hemorrhaging and blood clots from contusions to his head. Upon discharge from the hospital, Cannon was advised to return to the neurosurgery clinic in two weeks for further evaluation, and to report to the emergency room in the meantime if any changes in his mental status occurred.

The trial court denied a motion by the defendants to direct a verdict of not guilty as to the charged offense of first-degree assault on the ground that the evidence was insufficient as a matter of law to support the statutory elements set out in KRS 508.010, to wit:

(1) A person is guilty of assault in the first degree when:

(a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument; or

(b) Under circumstances manifesting extreme indifference to the value of human life he wantonly engages in conduct which creates a grave risk of death to another and thereby causes serious physical injury to another person.

(2) Assault in the first degree is a Class B felony.

KRS 500.080(15) defines serious physical injury as:

... physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ.

In appealing his conviction, Hocker alleged, and the majority of the panel of the Court of Appeals found, that the evidence of the Commonwealth did not support a finding that Cannon sustained "serious physical injury." In support of this argument, the appel-

lee cites *Luttrell v. Commonwealth*, Ky., 554 S.W.2d 75 (1977), wherein this Court, in a 4 to 3 decision, held that the victim, as a matter of law, was not seriously injured. The appellee's brief is in error, however, in its assertion that in that case "... a police officer was shot in the chest with a shotgun." In fact, as the opinion clearly relates, the officer was shot in the chest with the relatively few tiny pellets, described as "bird shot," contained in a single .38 caliber cartridge fired from a revolver. Moreover, although the officer was hospitalized for five days, his wounds were described in the opinion as merely "superficial." *Luttrell* at 77.

Similar reliance is placed upon the holding in *Souder v. Commonwealth*, Ky., 719 S.W.2d 730 (1986), wherein we also held that there was no evidence to prove an essential element of first-degree assault; namely, "serious physical injury." Again, we distinguish that situation from the facts in the case at hand. In *Souder* at page 732 we said,

> The only argument made by the Commonwealth to support "serious physical injury" is that because the child sustained burns in and about the mouth [from a cigarette or cigarette lighter], which, standing alone, admittedly were not serious, that the child may have been exposed to smoke fumes which "create[d] a substantial risk of death." ... Without in any way depreciating the hideous nature of such an act, the fact remains that there was nothing to prove that this child was in danger of death from this injury or from any other injury inflicted upon her.

There is a dramatic contrast between the injuries discussed in *Luttrell* and *Souder* and those inflicted on the victim Cannon. The jurors' common sense obviously convinced them that there was indeed "a substantial risk of death" from the skull fracture, hemorrhaging, and blood clotting suffered by Cannon which required a minimum of two days' round-the-clock observation and monitoring in the intensive care unit, the highest degree of care a hospital can render.

Finally, the appellee made much in his brief to the Court of Appeals of the fact that the Commonwealth did not call any medical experts to testify in person as to Cannon's injuries or prognosis. Likewise, the Court of Appeals' majority commented on this omission, opining that "... it would not seem an insurmountable burden to find a medical expert ..." to testify as to any substantial risk of death. Such comments are inappropriate in light of such precedents as *Prince v. Commonwealth*, Ky.App., 576 S.W.2d 244 (1978), and *Key v. Commonwealth*, Ky.App., 840 S.W.2d 827 (1992), with which we agree, holding that medical testimony is not an absolute requisite to establish serious physical injury or even physical injury. Here, as authorized by *Ewing v. Commonwealth*, Ky., 390 S.W.2d 651, 653 (1965), the victim was competent to testify about his own injuries. In addition, his mother also testified concerning her observations of Cannon immediately after he was assaulted.

While we agree with the Court of Appeals that the test for first-degree assault under our penal code is primarily one regarding the severity of the resulting injury rather than with the nature of the attack, in the present case we have no reservations in upholding the jury's verdict. Accordingly, the decision of the Court of Appeals is reversed and the judgment of conviction and sentence of the Fayette Circuit Court is affirmed.

STEPHENS, C.J., and COMBS, LAMBERT, REYNOLDS and WINTERSHEIMER, JJ., concur.

LEIBSON, J., dissents by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

Under the statutory definition in KRS 500.080(15), the issue is not whether there was proof of an *act* that *could* cause serious physical injury (i.e., "substantial risk of death," etc.). The issue is whether there was proof of an *injury inflicted* of such a nature that it did in fact cause "serious physical injury."

The only proof here relevant to the issue was of a simple, nondisplaced linear skull fracture, followed by symptoms of concussion (temporary loss of consciousness and amnesia) with no diagnosis or proof of neurologic

injury. This does not meet the statutory standard by any stretch of the imagination, but it is all we have here by way of proof of significant injury from which to judge.

Contrary to the Majority Opinion, except in obvious cases, medical evidence should be required to prove serious physical injury. The Majority believes the "jurors' common sense" is enough to prove serious physical injury occurred. If "common sense" means "speculation" rather than "reasonable inference" from proof, as it must in present circumstances, it is not enough. "Common sense" is not evidence, and cannot cure the lack of evidence to prove serious injury.