# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 25, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0119-MR

CHASE WESTON HELVEY                                      APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE THOMAS L. TRAVIS, JUDGE
NO. 18-CR-00568-001

COMMONWEALTH OF KENTUCKY                          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A circuit court jury convicted Chase Weston Helvey of murder, first-degree assault, and tampering with physical evidence and fixed his punishment at 30 years' imprisonment. The trial court accepted the jury's verdict and entered judgment accordingly. Helvey appeals from that judgment as a matter of right.[1]

Helvey argues for reversal of the judgment because of trial court errors in (1) allegedly denying him a fair trial by restricting his expert witness's testimony; (2) denying his request for an involuntary-intoxication jury instruction; (3) denying his motion for directed verdict on the first-degree assault charge; (4) admitting an unduly prejudicial photograph; (5) admitting

---

[1] Ky. Const. § 110(2)(b).

prejudicial victim-impact evidence during the guilt phase; and (6) that these purported errors cumulatively denied him a fair trial. We find no error and affirm the judgment.

## I. FACTS

Rebecca Richardson and her friend, James Potter, had substance use disorders. Richardson supported her drug habit by engaging in prostitution, she first met Helvey when he responded to her internet ad for services. At their first scheduled encounter, they were made to leave the premises before the transaction was completed. So Helvey thought Richardson owed him a refund.

Richardson and Helvey arranged a second meeting, this time at his residence. When she arrived, Helvey beat Richardson with a wooden object and attempted to burn her with a blowtorch. Helvey also shot Potter, who had arrived with Richardson. Richardson survived the assault but sustained several injuries requiring hospitalization. Potter died in the hospital. Helvey was indicted by a grand jury on charges of murder, first-degree assault, and tampering with physical evidence.

At trial, Helvey's theory of defense was both his voluntary and involuntary intoxication. To that end, he called Dr. Robert Granacher, a forensic neuropsychiatrist, who testified about Helvey's substance abused disorder, his intoxication, and his mental state at the time of the crime. Arguing that Richardson's injuries were not serious physical injuries, Helvey moved for a directed verdict on the assault charge.

The trial court gave a voluntary intoxication instruction, declining to give an involuntary-intoxication jury instruction. The trial court also denied a directed verdict on the first-degree assault charge but did instruct the jury on first-and second-degree assault. Ultimately, the jury found Helvey guilty on all counts as charged.

## II. ANALYSIS

### A. The trial court did not err when it limited Dr. Granacher's testimony to the contents of the report defense counsel furnished the Commonwealth.

Helvey argues he was denied his right to present an involuntary-intoxication defense because the trial court improperly limited the testimony of his expert, Dr. Granacher.

Dr. Granacher described for the jury Helvey's substance abuse and mental state at the time of the crime. In his initial written report furnished pre-trial to the Commonwealth, Dr. Granacher expressed four opinions: (1) Helvey was abusing drugs he purchased on the internet, (2) he was addicted to drugs, (3) he was intoxicated on the day of the incident, and (4) he exhibited no sign of neuropsychiatric impairment.

After the initial written report, Dr. Granacher added two more opinions: (1) Helvey was involuntarily intoxicated on the day of the incidents because of his substance abuse disorder and (2) he was acting under the influence of extreme emotional disturbance at the time of the incident. Through oversight, Helvey's counsel failed to furnish the Commonwealth with Dr. Granacher's later report containing two additional opinions.

3

During Dr. Granacher's direct testimony, he expressed only the four disclosed opinions. But on cross-examination, it became apparent that the Commonwealth had not seen the most recent report. The Commonwealth then moved the trial court to limit the expert's testimony to the information in the original report. Defense counsel did not object but instead agreed that the defense would not mention the latter two conclusions on redirect.

We find this issue was not preserved because defense counsel made no objection to the trial court's limitation of Dr. Granacher's testimony. We review this issue, as requested by Helvey, for palpable error, meaning we will reverse the judgment only if Helvey suffered manifest injustice because of the limitation.[2] From the outset, we find no error in the limitation imposed here without objection.

Under Kentucky Rule of Criminal Procedure (RCr) 7.24, Helvey had a duty to turn over Dr. Granacher's full report to the Commonwealth to prepare for trial. If a mental health examination is properly requested but not disclosed, then the trial court may prohibit its introduction.[3] Here, while it was not intentional, the defense did not provide the Commonwealth the updated

---

[2] RCr 10.26; *Benham v. Commonwealth*, 816 S.W.2d 186, 187 (Ky. 1991).

[3] R.Cr 7.24 (". . . [u]pon written request of the Commonwealth, the defendant, subject to objection for cause, shall permit the Commonwealth to inspect, copy, or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession, custody, or control of the defendant, which the defendant intends to introduce as evidence or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to the witness's testimony.").

4

report after it requested all of Dr. Granacher's findings. The trial court properly limited testimony to the original report, which is all that had been shared with the Commonwealth to prepare for trial.[4]

The defense relies on *Weaver v. Commonwealth* [5] to support the contention that the limitation imposed on Dr. Granacher's opinions denied Helvey a fair trial. In *Weaver*, the trial court committed harmless error in limiting expert testimony about the defendant's voluntary-intoxication defense.[6] The defendant maintained his voluntary-intoxication defense throughout trial, and he presented enough evidence to be entitled to a jury instruction.[7] But the trial court limited expert-witness testimony regarding the defendant's voluntary intoxication by concluding the testimony was not probative.[8] We found the trial court's limitation was error because while the defendant did not specifically argue the expert's testimony supported a voluntary-intoxication defense, the testimony was relevant to that defense.[9]

---

[4] *Id.* ("If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances.").

[5] 298 S.W.3d 851 (Ky. 2009).

[6] *Id.* at 857.

[7] *Id.* at 853.

[8] *Id.*

[9] *Id.* at 857.

5

We find here that, unlike in *Weaver*, the trial court had the authority—specifically granted in the criminal rules—in fairness to confine Dr. Granacher's testimony to the limits of the defense's disclosure. Granted, Dr. Granacher's latter conclusions included that Helvey was involuntarily intoxicated because of his substance abuse disorder. But, as we discuss later in this opinion, the excluded opinion evidence was not critical to Helvey's defense because under current Kentucky law, addiction alone does not equate to involuntary intoxication.[10]

Additionally, unlike in *Weaver*, the excluded opinion evidence here still made its way to the jury. Dr. Granacher's opinion that Helvey was involuntarily intoxicated due to his addiction was implied during cross-examination. On cross-examination, the Commonwealth asked Dr. Granacher if anyone had coerced Helvey or if his taking drugs was involuntary. The doctor replied that Helvey's acts were not voluntary but triggered by his environment and caused by withdrawal. While not explicitly stated, these responses indicated that Dr. Granacher believed Helvey was involuntarily intoxicated when he committed the offense.

Dr. Granacher's other excluded conclusion was that Helvey was acting out of extreme emotional disturbance. But Helvey did not argue he was suffering from extreme emotional disturbance (EED) throughout trial. So even if Dr. Granacher's opinions that Helvey was involuntarily intoxicated and

---

[10] *Id.* at 853.

6

acting out of EED were presented to the jury, they were not fundamental to Helvey's defense.

The defense did not object to the restriction placed on Dr. Granacher's opinion testimony, the trial court had the authority to impose the restriction because of defense counsel's oversight, and the excluded opinion evidence was not crucial to Helvey's defense. We are satisfied that the limitation did not deny Helvey a fair trial.

## B. Helvey's right to present a defense was not violated by the trial court limiting Dr. Granacher's testimony about other witnesses' intoxication.

At the time of the incident, several people were present at the house with Helvey. Austin Adams, Jonathan Whitmoyer, and Nolan Stephenson were there, and they testified at trial.

The trial court sustained objections to Dr. Granacher's testimony about these witnesses' level of intoxication and how their intoxication might have affected their ability to perceive events at the scene. Helvey argues the trial court's rulings unfairly curtailed his defense, affecting his ability to receive a fair trial. The Commonwealth counters that Dr. Granacher lacked personal knowledge of these witnesses' level of intoxication. This issue was unpreserved, so we review for palpable error.[11]

We find the court did not err in sustaining objections to Dr. Granacher's proposed testimony about Adams, Whitmoyer, and Stephenson's intoxication.

---

[11] RCr. 10.26; *Benham,* S.W.2d at 187.

7

An expert witness may testify to hypothetical questions based on resources reasonably relied upon by others in their profession.[12]  For example, without personal knowledge, Dr. Granacher could not testify to each witness's individual condition, but he could testify generally about the effect that certain drugs would have on their ability to perceive and recall events.

Dr. Granacher began detailing the events of the night and described each witness's capacity to perceive events.  While he tried to do so in general terms, he failed.  The trial court and counsel tried to provide guidance to his testimony by instructing him only to answer the questions asked, but he again failed to do so.  We find it was not error for the trial court to limit his testimony in this way.  While the credibility of a witness is always at issue, an expert witness may not, without some evidentiary basis, speak to another witness's mental state.[13]  Additionally, this did not limit Helvey's involuntary-intoxication defense since the mental state of others at the time of the crime is irrelevant to Helvey's own mental capacity.

### C. Helvey was not entitled to an involuntary-intoxication jury instruction.

Helvey argues he was entitled to an involuntary-intoxication jury instruction because his intoxication at the time of the crime was a result of his

---

[12] Kentucky Rule of Evidence (KRE) 702.

[13] *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d. 575, 581 (Ky. 2000) ("Moreover, Dr. Hahn's assertion that Goodyear could have made a safer wheel assembly using 1930's technology or the technology used on B–52's was founded only on his bare assertion that this was so."); *see Commonwealth v. Huber*, 711 S.W.2d 490, 491 (Ky. 1986).

addiction to Clonazolam.[14]  At trial he requested both involuntary intoxication and voluntary intoxication defense jury instructions.  The trial court denied his request for an involuntary intoxication instruction.

We review a trial court's refusal to give a jury instruction under the reasonable-juror standard.[15]  We ask, viewing the evidence favorably toward the movant, whether the proof presented would permit a reasonable juror to find as the instruction allows.[16]  If not, then the trial court did not abuse its discretion.

---

[14] Clonazolam, also called Clonitrazolam is a psychoactive drug that belongs to the class of benzodiazepines.  Benzodiazepines, also known as "benzos" are "a class of psychoactive drugs that affect the neurotransmitter called gamma-aminobutyric acid (GABA). The drug acts "as a sedative, anxiolytic, anticonvulsant, and muscle relaxant. These drugs are medically prescribed for conditions such as anxiety, agitation, insomnia, alcohol withdrawal, seizure control, muscle relaxation, and inducing sleep before surgical procedures."  The strong sedation effects of the drug lead to severe withdrawal symptoms.  Dr. Ganacher reasoned it was Helvey's extreme withdrawal symptoms that lead him to act in the manner he did. *Guide to Clonazolam: Dosage, Half-Life, and Abuse Potential - San Diego Addiction Treatment Center*. (online) San Diego Addiction Treatment Center. Available at: https://sdtreatmentcenter.com/synthetic-drugs/clonazolam (accessed March 4, 2021).

[15] *Springfield v. Commonwealth*, 410 S.W.3d 589, 594 (Ky. 2013) (describing that review for failure to give jury instructions as neither de novo or abuse of discretion) ("In this context, the characterization makes little difference and so the inconsistency is more apparent than real.  On the one hand, if the evidence supports an instruction that is otherwise appropriate, the proponent is entitled to the instruction as a matter of law, and . . . our review can be characterized as *de novo.*  On the other hand, to emphasize that the sufficiency of the evidence is measured against a reasonableness standard—the reasonable juror—our review can be characterized as for abuse of discretion.  Regardless of the characterization, however, the 'reasonable juror' is the operative standard, in the appellate court as well as in the trial court.").

[16] *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015) (" When the question is whether a trial court erred by: (1) giving an instruction that was not supported by the evidence; or (2) not giving an instruction that was required by

We explained in *Holland v. Commonwealth*[17] that official commentary to

KRS 501.080 provides that an involuntary-intoxication defense may apply

when:

> intoxication resulting from substances taken into the body
> under duress or coercion; intoxication results from a
> genuine mistake as to the character of the substances
> causing it; intoxication results from a weakness unknown to
> the defendant [and where the level of intoxication is] grossly
> excessive to the quantity of stimulant taken into the body.[18]

In *Tate v. Commonwealth*,[19] we further explained the requirements for

involuntary intoxication to be a viable defense.  We found that under

KRS 501.080(2) a defendant's involuntary intoxication will negate his culpable

conduct only if it rendered the defendant unable to appreciate the criminality of

his conduct or conform to the requirements of law.[20]  This Court found that a

defendant's intoxication due to his addiction cannot be treated differently than

other voluntary acts, because the legislature has not provided for such an

exception.[21]  We maintain today that until the legislature so provides,

---

the evidence; the appropriate standard for appellate review is whether the trial
court abused its discretion.").

[17] 114 S.W.3d 792, 804 (Ky. 2003).

[18] *Id.*

[19] 893 S.W.2d 368, 371 (Ky. 1995).

[20] *Id.* at 371.

[21] *Id.* at 372 ("Therefore, any action in this state to recognize voluntary
drug addiction, standing alone, as a mental illness is to be accomplished, if
ever, by the legislature rather than by judicial decree. Voluntary drug users
have not been included within the protections of KRS 501.080(2).").

addiction alone is insufficient to support an instruction for involuntary intoxication. An involuntary-intoxication defense requires the defendant prove two things: (1) that he was intoxicated for reasons beyond his control and (2) that the intoxication rendered him unable to appreciate his conduct or conform it to the requirements of the law.

Helvey argues that he has a substance abuse problem, which is clinically defined as mental illness; therefore, he was entitled to an involuntary-intoxication instruction. But at trial, he only argued and provided proof that his addiction rendered him unable to resist taking drugs and not that those drugs rendered him unable to understand his conduct.[22] There is a critical difference in being unable to appreciate the wrongfulness of one's actions and being unable to resist taking intoxicating substances. As previously stated, an involuntary-intoxication defense requires the defendant must show both his addiction forced him to ingest intoxicating substances and that as a result he was unable to understand his actions or conform to the law.

While true that addiction is clinically defined as a mental illness, and expert witnesses described it as such at trial, no evidence showed Helvey's addiction rendered him unable to appreciate the criminality of his conduct.[23] Instead, evidence tended to prove that Helvey was aware Richardson was

---

[22] Even if Dr. Granacher had been able to testify regarding his conclusion that Helvey was involuntarily intoxicated, his testimony still would not have provided proof that the ingested drugs rendered Helvey mentally incapacitated.

[23] American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (5th Ed., 2013).

11

coming, that he planned to attack her, and that afterward, he knew what he did was wrong. This evidence, absent evidence that he was unable to appreciate his actions, proves Helvey sufficiently appreciated his actions at the time of the crime.

To reiterate, involuntary intoxication is only a defense to a crime when it renders the defendant substantially incapable of appreciating the criminality of his conduct or to conform his conduct to the requirements of law.[24] Helvey failed to argue or provide sufficient evidence that he lacked this capacity, so a reasonable jury could not have found, as a matter of law, the intoxication necessary to sustain Helvey's involuntary-intoxication defense.[25]

**D. Helvey was not entitled to a directed verdict on first-degree assault.**

Helvey claims the trial court erred by not directing a verdict in his favor on first-degree assault charge, arguing the Commonwealth failed to prove Richardson suffered a serious physical injury. Because Helvey moved for a directed verdict at both the conclusion of the Commonwealth's evidence and at the end of his own, this issue was preserved, so we review under our normal standards.[26]

---

[24] Kentucky Revised Statute (KRS) 501.080(2).

[25] Worth noting is that the jury, properly instructed, ultimately rejected Helvey's voluntary-intoxication defense.

[26] The Commonwealth argues this issue is unpreserved because the record is unclear whether the defense articulated the basis of its motion. We disagree. The defense moved for a directed verdict at the appropriate times, and while the audio is unclear as to defense's exact reasons for the motion, it was requested, and the trial court's response indicates it understood those reasons.

The trial court did not err in denying Helvey's motion for directed verdict. Upon the defense's motion for a directed verdict, the trial court must draw all fair and reasonable inferences from the evidence presented in favor of the Commonwealth.[27] The trial court is to presume the Commonwealth's evidence as true and leave issues of credibility and weight of evidence to the jury.[28] A reviewing court is only to reverse a trial court's denial of a directed verdict when it would be clearly unreasonable for the jury to find the defendant guilty.[29] So this Court will only find error if it would have been clearly unreasonable for the jury to find Helvey guilty of first-degree assault for lack of proof of serious physical injury to Richardson.

Serious physical injury is an injury "which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged impairment of the function of a bodily organ."[30] In assessing whether a defendant's actions resulted in serious physical injury, the nature of the injury and characteristics of the victim are considered. We find that with the evidence presented at trial a reasonable jury could conclude Helvey inflicted a serious physical injury on Richardson.

Helvey stipulated to Richardson's injuries, which were presented to the jury through her certified medical records. Richardson's injuries included

---

[27] *Benham*, 816 S.W.2d at 187; RCr 10.26.

[28] *Benham*, 816 S.W.2d at 187.

[29] *Commonwealth v. Sawhill*, 660 S.W.2d 3, 5 (Ky. 1983).

[30] KRS 500.080(15).

13

splenic hemorrhage, maladaptive health behaviors affecting the condition, a closed fracture of both the left and right side occipital bone, subdural hemorrhage, subarachnoid hemorrhage, a thoracic spine fracture, fractures in multiple ribs, traumatic pneumothorax initial encounter, a urinary tract infection, a fracture to the body of left scapular, and orbital fracture. Richardson testified that she was hospitalized for several days and suffers from some loss of vision because of her injuries. We find a reasonable jury could conclude Richardson suffered serious physical injury.

Helvey argues Richardson did not suffer prolonged impairment of health because of her injuries as she testified she did not remember the severity of her injuries, that she was voluntarily discharged from the hospital, and that one lasting effect of her injury was a red spot on her face. While there is not a certain degree of injury that the law defines as serious physical injury, we have held a skull fracture and blood clots can constitute a serious injury.[31] In contrast, we have held that cigarette burns, and potential smoke inhalation are not serious physical injuries.[32]

We find the facts here are like those in *Hocker v. Commonwealth* where we explained that the jurors' common sense allowed them to conclude that the victim suffered a substantial risk of death from "the skull fracture, hemorrhaging, and blood clotting . . . which required a minimum of two days'

---

[31] *Hocker v. Commonwealth*, 865 S.W.2d 323, 325 (Ky. 1993).

[32] *Id.* at 325 (discussing *Souder v. Commonwealth*, 719 S.W.2d 730 (Ky. 1986)).

round-the-clock observation and monitoring in the intensive care unit, the highest degree of care a hospital can render." The jury's awareness of the injuries Richardson suffered, and multiple-day hospitalization made it reasonable for the jury to conclude they constituted serious physical injury. Therefore, the trial court did not err in denying the defense's directed verdict motion, and the jury was properly instructed to consider both first-and second-degree assault.

### E. The photograph of Potter's eye was properly admitted because it was more probative than prejudicial.

The Commonwealth introduced four photographs taken at James Potter's autopsy. The photographs displayed Potter's bullet wound to the head. Defense counsel objected and argued that the photographs were not material to any issue at trial. The trial court excluded one photograph that displayed the bullet path through Potter's head but admitted three photos that showed Potter's protruding left eye, a condition caused by the gunshot wound. On appeal, Helvey argues the admission of one photo, Exhibit 83, as irrelevant. We review a trial court's decision to admit evidence over objection for abuse of discretion.[33]

A photograph may not be excluded merely because it is gruesome, but it may be excluded if its content is so inflammatory that its probative value is substantially outweighed by its prejudicial effect.[34] In *Hall v. Commonwealth*[35]

---

[33] *Holbrook v. Commonwealth*, 525 S.W.3d 73, 85 (Ky. 2017).

[34] *Adkins v. Commonwealth*, 96 S.W.3d 779, 794 (Ky. 2003).

[35] 468 S.W.3d 814, 824 (Ky. 2015).

we explained that the probative value of photographic evidence is to be considered in light of all of the proof presented. We reiterated the three steps a trial court must undertake to determine whether evidence is admissible under KRE 403.[36] The trial court is first to assess the probative value of the proffered evidence, then assess the risk of harm or prejudice to the defendant, and then determine if the probative value is substantially outweighed by the potential harm.[37] Overall, photographic evidence must be highly inflammatory and prejudicial to be excluded.[38]

We find the trial court did not err in admitting Exhibit 83. The trial court reviewed the photographs and assessed their probative value considering the potential harm to the defendant. The picture here allowed the jury to see the bullet wound caused Potter's left eyeball to protrude. Potter's injury is not only relevant to the offense with which Helvey was charged, it also helped the jury understand the testimony of several witnesses. Officer Williams, an officer who arrived at the scene, mentioned the first thing he noticed about Potter was his eye. Daniel Hall, the paramedic who transported Potter to the hospital also testified about Potter's eye. Further, Dr. Frame the medical examiner explained how the eye protrusion was caused by the gunshot wound. Therefore, the evidence was highly relevant and probative of the fact that the victim suffered a gunshot wound to the head.

---

[36] *Id.*

[37] *Id.*

[38] *Adkins*, 96 S.W.3d at 794.

Additionally, the prejudice to the defendant was minimal. The photograph is certainly grim, but it is not highly inflammatory. Autopsy photographs are often shown to juries, and we find Potter's no more gruesome than those routinely admitted. Helvey does not allege any prejudice that resulted from the photograph. We find what little prejudice that may have arisen from the introduction of these photographs was not so great as to overcome their probative value.

## F. Billie Martin's testimony was properly introduced during the guilt phase of trial because it was not victim-impact evidence.

At trial, Billie Martin, James Potter's sister, testified to Potter's background and his struggle with addiction. Her testimony was that the week before the murder, Potter asked to stay with her, but that he later changed his mind and told her he had found another place in Lexington to stay. This was the last time she spoke with Potter. Additionally, during her testimony, the Commonwealth introduced a picture of Potter. Helvey argues this was impermissible victim-impact evidence introduced solely to arouse sympathy for Potter and inflame the jury.

This error is unpreserved because Helvey did not object at trial. So we again review for palpable error and will only reverse the conviction if Helvey faced manifest injustice as a result of any such error.[39]

Admitting this evidence was not error. Victim-impact evidence is impermissible when it is presented in a manner that is overly emotional,

---

[39] *Benham,* 816 S.W.2d at 187; RCr 10.26.

17

condemnatory, or accusatory in nature. Otherwise, general background information about the victim may be introduced to inform the jury that the matter should not be taken lightly.[40] The Commonwealth may introduce information about the victim so long as it does not glorify or enlarge them.[41]

We find here that Martin's testimony was not overly emotional and did not glorify the victim. During her testimony, she discussed that Potter was addicted to drugs, that he was known to lie to his family, and was associated with the "wrong people." While she did testify that he helped and cared for his family, this is far from victim glorification. Martin's testimony did not go beyond providing relevant background information, nor was it overly emotional or accusatory. It described the victim as a living person, and an imperfect one at that. We conclude Helvey suffered no manifest injustice because of Martin's testimony.

### G. No cumulative error occurred at Helvey's trial.

Helvey also argues the cumulative effect of the errors at his trial warrant a reversal of his conviction. A reviewing court may reverse a defendant's conviction because of cumulative error when multiple errors, although not individually warranting reversal, culminate in a fundamentally unfair trial.[42] Here, however, we find no error in the way the trial proceeded. There being no error, there was no cumulative error.

---

[40] *Bussell v. Commonwealth*, 882 S.W.2d 111, 113 (Ky. 1994).

[41] *Bowling v. Commonwealth*, 942 S.W.2d 293, 302-303 (Ky. 1997).

[42] *Elery v. Commonwealth*, 368 S.W.3d 78, 100 (Ky. 2012).

18

## III. CONCLUSION

We affirm the judgment.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Steven Nathan Goens
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Barry
Assistant Attorney General