RENDERED: APRIL 17, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0544-MR

KRISTEN O'BRIEN[1]                                                    APPELLANT

APPEAL FROM KENTON CIRCUIT COURT
v.          HONORABLE PATRICIA M. SUMME, JUDGE
ACTION NO. 14-CR-00668

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, MOYNAHAN, AND TAYLOR, JUDGES.

---

[1] Effective April 1, 2026, the Rules of Appellate Procedure (RAP) were amended with respect to use the of initials in cases involving expungements. RAP 5(B)(2) notes that redactions per Kentucky Rules of Civil Procedure (CR) 7.03 (use of initials or a descriptive term) will apply to "appeals arising from judgments **granting** expungements." RAP 31(B) reiterates that CR 7.03 redactions (use of initials) must be used instead of a name "in cases involving juveniles, allegations of abuse and neglect, termination of parental rights, mental health, and **appeals arising from judgments granting expungements**." Prior to this amendment, initials were utilized in **all cases involving expungements** -- regardless of whether they were granted or denied. We now eliminate use of such redaction (*i.e.*, initials) in cases where expungement has been denied. Because this case results in the denial of expungement, we utilize the full name of the Appellant rather than referring to her by means of initials. (Emphases added.)

COMBS, JUDGE:  Appellant, Kristen O'Brien (O'Brien), appeals from an Order

of the Kenton Circuit Court entered April 29, 2025, denying her request for

expungement.  After our review, we affirm.

On August 7, 2014, the Appellant, O'Brien, was indicted for three

counts of first-degree wanton endangerment.  These are Class D felonies under

KRS[2] 508.060.  The Commonwealth's offer on a plea of guilty, dated November

12, 2014, describes the facts of the case as follows in relevant part:

> On or about June 5, 2014, in Kenton County, Kentucky,
> the Defendant wantonly caused a wreck on I-275 by
> colliding her vehicle with [Michelle Woods's] vehicle.
> The Defendant . . . while driving at a high rate of speed,
> caused a collision that flipped [Michelle Woods's]
> vehicle multiple times.  [Jennifer Szekely] and [Kyle
> Atkinson] were [passengers] in Woods's vehicle at the
> time of the collision. . . .

Woods submitted a victim impact statement dated December 1, 2014,

approximately six months after the accident.  She explained that when her vehicle

was flipping, she hit the whole left side of her head "above her ear from her

hairline to the center back of her head" and her arm was dragging along the

expressway.  She vaguely remembered hanging out of the car when they landed in

a gully on the side of the expressway.  Woods had road rash 3/4th the length of her

left arm and a scar that burned whenever she bent her wrist.  She also had scars on

---

[2] Kentucky Revised Statutes.

the elbow and side of her left arm. Not all the glass came out of her arm until about three weeks after the accident. The left side of her head was extremely painful and her head felt "on fire." It was swollen and "is still sensitive to this day." She had a nickel-size scab on her head where her hair had become tangled in tree branches and was missing. Woods further explained that they cut her out of her vehicle and took her by ambulance to the hospital. At the hospital, dirt was flushed out of her eyes, and her arm had to be scrubbed to remove the "black stuff" out of the burn which was "probably one of the worst things [she] ever felt." At the time of her statement, Woods still had achiness in her low back. Her head was supposed to be better in a few weeks. Her arm was healed except for scars.

Jennifer Szekely, a passenger in the vehicle, prepared a victim impact statement explaining that after the accident, they were lying in a ditch because the vehicle had landed at an angle on its side. The driver, Woods, was half-way out of her window in the mud. Tree branches were coming in through what used to be the other passenger's (Kyle Atkinson's) window. Atkinson's hand "was torn so deep I could see white." Szekely stated that an EMT climbed in, put a neck brace on her, and removed her from the vehicle, which had to be opened by the "jaws of life." She was placed on a backboard and taken to the hospital by ambulance. Szekely stated that for the past seven months, she has been dealing with lower back

injuries as a result of the accident. "The pain is constant and the treatment is still ongoing."

Woods and Szekely both appeared and gave statements at O'Brien's February 2, 2015, sentencing hearing eight months after the accident. Woods described the pain she had experienced: the burning on her arm and head was almost unbearable -- especially when they had to scrub the road rash and try to get the pieces of glass out of her arm, which is scarred. Szekely stated that the injuries from the accident have caused her physical pain from her lower back injuries "every single day," "every morning when she wakes up." Szekely was "still receiving treatment, still determining how much is permanent, how much is not."

On March 5, 2015, the trial court entered Judgment and Sentence on Plea of Guilty. O'Brien was sentenced to three years on each of the wanton endangerment counts, to run concurrently with each other. Probation was not granted.

On January 24, 2025, O'Brien filed a Form AOC 496.3 application seeking expungement of the three wanton endangerment charges under KRS 431.073(1)(d),[3] which provides as follows:

> Every petition or application filed seeking expungement
> of a conviction shall include a certification of eligibility

---

[3] As the Commonwealth notes, the application also sought expungement of two other charges that were certified as eligible. Those two other charges were expunged and have been redacted from documentation in the official circuit court record.

for expungement. The Department of Kentucky State Police and the Administrative Office of the Courts shall certify that the agencies have conducted a criminal background check on the petitioner and whether or not the petitioner is eligible to have the requested record expunged.

The statute also provides that any person convicted of certain Class D felonies "that did not result in serious bodily injury or death . . . may file . . . an application to have the judgment vacated." O'Brien application's lists the names of the victims as "unknown." The accompanying eligibility certification report, dated January 9, 2025, reflects that the three wanton endangerment charges were ***not*** eligible for expungement.

On January 30, 3025, the Commonwealth filed a response objecting to O'Brien's motion, arguing that the felony convictions for which she sought expungement were not eligible pursuant to KRS 431.073(1)(d).

The court scheduled an expungement hearing for February 10, 2025.

On February 5, 2025, O'Brien, by counsel, filed a reply to the Commonwealth's response. O'Brien explained that she had obtained an earlier expungement eligibility certificate indicating that the three wanton endangerment felonies were eligible for expungement; however, that certificate had expired before her application for expungement was filed.[4] O'Brien argued that she was

---

[4] The eligibility reports state that "'Eligibility certification expires 30 days from report date listed below.'"

eligible for expungement, contending that the statute governing first-degree wanton endangerment only refers to creating *a risk* of serious physical injury. O'Brien noted that she had not admitted to causing a serious physical injury during her plea colloquy and that the unsworn victims' statements were insufficient to establish that a serious bodily injury had occurred. The remainder of O'Brien's reply addressed the circumstances supporting expungement.

At the February 10, 2025, expungement hearing, O'Brien's counsel essentially reiterated the arguments asserted in her written reply. The Commonwealth explained that its response was based on the Kentucky State Police eligibility certification and that this is an eleven-year-old case whose file was archived in Frankfort. O'Brien's counsel had obtained and provided DVDs containing the victims' impact statements. The court responded that it would review the matter and took the case under submission. No testimony was presented.

On April 29, 2025, the court entered an Order of "partial" expungement on a Form AOC-496.4. The court found that the Commonwealth had objected to the application and that the three first-degree wanton endangerment charges are **not** eligible for expungement. However, the court granted the application as to the two other eligible charges. No motion for reconsideration nor a request for additional findings was filed.

On May 1, 2025, O'Brien, *pro se*, filed a Notice of Appeal to this Court.

There is no due process right to expungement. "[E]xpungement is not a *right* but a statutory *privilege* -- a privilege the General Assembly has no obligation to provide at all and which it may therefore provide subject to conditions that our Courts are not at liberty to ignore." *Fisher v. Commonwealth,* 599 S.W.3d 890, 893 (Ky. App. 2020) (emphasis original) (footnote deleted).

KRS 431.073 governs expungement of certain felony convictions. O'Brien filed her application pursuant to KRS 431.073(1)(d), which provides in relevant part as follows:

> **(1) Any person who has been**:
>
> . . .
>
>> (d) **Convicted of a Class D felony** . . . which was not a violation of KRS 189A.010, 508.032, or 519.055, abuse of public office, a sex offense, or an offense committed against a child, **and did not result in serious bodily injury** or death; or of multiple felony offenses eligible under this paragraph;
>
> **may file with the court in which he or she was convicted an application to have the judgment vacated.  The application shall be filed as a motion in the original criminal case**. . . .
>
> . . .
>
> (4)(a) **In an application pursuant to subsection (1)(d) of this section, upon the filing of the Commonwealth's**

**response objecting to the vacating of a judgment and expungement of a record, the court shall schedule a hearing** within one hundred twenty (120) days of the Commonwealth's response. The prosecutor shall specify in the objection the reasons for believing a denial of the application is justified. **At the hearing at which the applicant or his or her attorney must be present, the applicant must prove by clear and convincing evidence that**:

>1. Vacating the judgment and expunging the record is consistent with the welfare and safety of the public;
>
>2. The action is supported by his or her behavior since the conviction or convictions, as evidenced that he or she has been active in rehabilitative activities in prison and is living a law-abiding life since release;
>
>3. The vacation and expungement is warranted by the interests of justice; and
>
>4. Any other matter deemed appropriate or necessary by the court to make a determination regarding the petition for expungement is met.

(b) At the hearing, the applicant may testify as to the specific adverse consequences he or she may be subject to if the application is denied. The court may hear testimony of witnesses and any other matter the court deems proper and relevant to its determination regarding the application. The Commonwealth may present proof of any extraordinary circumstances that exist to deny the application. A victim of any offense listed in the application shall have an opportunity to be heard at any hearing held under this section.

(5) **The court may order the judgment vacated**, and if the judgment is vacated the court shall dismiss with

prejudice any charges which are eligible for expungement under subsection (1) of this section or KRS 431.076 or 431.078, and, upon full payment of the fee in subsection (11) of this section, order expunged all records in the custody of the court and any records in the custody of any other agency or official, including law enforcement records, **if the court finds that**:

> (a) The person had not in the five (5) years prior to the filing of the application to have the judgment vacated been convicted of a felony or a misdemeanor;

> (b) No proceeding concerning a felony or misdemeanor is pending or being instituted against the person; and

> (c) For an application pursuant to subsection (1)(d) of this section, the person has been rehabilitated and poses no significant threat of recidivism.

(Bold-face emphases added.) The statute does not require the court to make findings where an application has been denied.

We address O'Brien's second argument first. She contends that the court's findings are not in accordance with plain language of KRS 431.073(1). Specifically, O'Brien takes issue with "the finding that [her] Class D felony charges are not eligible for expungement because they 'resulted in serious bodily injury or death.'"

O'Brien explains that she was convicted of first-degree wanton endangerment under KRS 508.060, which requires proof of conduct that created "a substantial danger or death or *serious physical injury*." She cites KRS

500.080(19) of the Kentucky Penal Code, which defines *serious physical injury* as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, prolonged loss or impairment of the function of any bodily organ, or eye damage or visual impairment. . . ." O'Brien argues that there was "no sworn testimony or medical proof from a treating physician" establishing that the victims had sustained any of those injuries.

The Commonwealth submits that O'Brien ignores the precise language of the expungement statute, KRS 431.073(1)(d), which speaks in terms of "serious *bodily* injury," rather than "serious physical injury" as used in the criminal statute, KRS 508.060. The Commonwealth contends that the use of different terms establishes that "the determination as to serious bodily injury is to be made independently by the trial court in an expungement proceeding."

We agree with the Commonwealth that the determination as to serious bodily injury is a discretionary matter to be determined independently by the court in an expungement proceeding. "KRS 431.073(5) provides that the circuit court '**may** order the judgment vacated,' indicating the permissive nature of the decision . . . ." *Walker v. Commonwealth*, 696 S.W.3d 51, 56 (Ky. App. 2024) (emphasis added).

"Serious bodily injury" is not defined in KRS Chapter 431. However, "the legislature need not define every term or factual situation in a statute, and terms left undefined are to be accorded their common, everyday meaning." *Wilfong v. Commonwealth*, 175 S.W.3d 84, 96 (Ky. App. 2004).

We are persuaded that the attempt to distinguish "serious physical injury" from "serious bodily injury" is an irrelevant exercise in semantics. The injuries would qualify under either term. According to the victim impact statements, both victims had ongoing pain for months following the accident. Woods had permanent scarring. At the time of the sentencing hearing -- eight months after the accident -- Szekely still had back pain every single day. Our Supreme Court has held that pain alone is an impairment of health and that if prolonged, it may constitute a serious physical injury. *Parson v. Commonwealth*, 144 S.W.3d 775, 787 (Ky. 2004), *overruled on other grounds by Shields v. Commonwealth*, 647 S.W.3d 144 (Ky. 2022).

The seriousness of an injury is a question of fact. *See Rowe v. Commonwealth*, 50 S.W.3d 216, 220-21 (Ky. 2001). In the case before us, there was more than sufficient proof for the court to conclude that O'Brien's victims sustained serious bodily injury. The court did not abuse its discretion in concluding that O'Brien's three first-degree wanton endangerment charges were not eligible for expungement under KRS 431.073(1)(d).

-11-

To the extent that O'Brien argues that medical testimony was required to establish the victims' injuries, we note that "medical testimony is not an absolute requisite to establish serious physical injury or even physical injury. . . . [T]he victim [is] competent to testify about his own injuries." *Commonwealth v. Hocker*, 865 S.W.2d 323, 325 (Ky. 1993).

Other arguments raised in O'Brien's briefs that we have not addressed were either unpreserved for review or lacking in merit.

We affirm the judgment of the Kenton Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Kristen Marie O'Brien, p*ro se*
Erlanger, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew Krygiel
Assistant Attorney General
Frankfort, Kentucky